[File No. 6909]

IN THE MATTER OF THE APPLICATION OF MIDWEST MOTOR EXPRESS, INC., Bismarck, N. Dak. for a Class "A" Certificate, etc. Northern Pacific Railway Company, a Corporation, Appellant, v. S. S. McDONALD, et al, as Members of Public Service Commission of the N. Dak. and Midwest Motors Express, Inc., a Corporation, Bismarck, N. Dak., Respondents.

(23 NW2d 49)

Opinion filed May 2, 1946

*Conmy & Conmy,* for appellant.

*C. F. Kelsch,* Assistant Attorney General and *Halvor L. Halvorson,* for respondents.

Burke, J. The petitioner and respondent, Midwest Motor Express Inc., petitioned the Public Service Commission for a certificate of public convenience and necessity authorizing Class "A" common carrier freight service by motor truck from Bismarck to Killdeer via U. S. Highway No. 10 and N. D. Highway No. 25, covering the intermediate points of Mandan, Stanton, Hazen, Beulah, Zap, Golden Valley, Dodge, Halliday, Werner and Dunn Center.

Pursuant to statutory provisions Rev Code 1943, § 49–1813 the Commission ordered a hearing upon the petition and gave notice thereof to all other carriers operating in the territory proposed to be served by the petitioner. At the hearing the Northern Pacific Railway Company appeared and entered its formal protest to the granting of the petition. The petition was thereafter granted and the commission ordered the issuance of the certificate of public convenience and necessity in accordance with the proposals contained in the petition.

The protestant, the Northern Pacific Railway Company, appealed from that order to the District Court of Mercer County. Upon that appeal the District Court affirmed the order of the Commission and entered judgment accordingly. The instant appeal is from that judgment. The appellant has demanded a review of the entire case in this court.

The record discloses that the Midwest Motor Express operates as a common carrier by motor vehicles under an interstate certificate between St. Paul, Minn. and Dickinson, N. D., and under a Class "A" intrastate certificate between Fargo, N. D. and Dickinson, N. D. By its interstate certificate it is also authorized to transport interstate shipments to and from the stations which by the instant petition it seeks to have included within its intrastate authority. The route of petitioner from Fargo to Dickinson is parallel to the route of the Northern Pacific Railway across the state. The route it proposes to inaugurate will parallel the route of the North Branch of the Northern Pacific Railway from Mandan to Killdeer with the exception that it will by-pass the stations of Harmon, Price, Sanger, Hensler and Fort Clark. All stations and the territory to which it proposes to furnish transportation service are now served by the railway with the single exception of Center which is not on the railway but receives transportation service from another truck line which operates under a Class "A" intrastate certificate between Center and Bismarck. The petitioner's proposal excludes competition with this line as it asks only that it be authorized to carry goods to and from Center and points north and west of Center. Under petitioner's tentative plan its truck would leave Bismarck westbound at 7 A. M. Central Time and arrive in Killdeer seven and one-half hours later or at about 1:30 P. M. Mountain Time. On the eastbound trip the truck would leave Killdeer at 3 P. M. Mountain Time and arrive in Bismarck five and one-half hours later or at 9:30 P. M. Central Time. No explanation is made as to why the west bound schedule is expected to consume two hours more time than the east bound. At any rate the plan is largely speculative as the manager of the petitioner testified, "We can't set the schedule as to what time we are going to be in each town until we try it out."

The railroad furnishes regular service to this territory by means of a tri-weekly freight train and a so called "hotshot" car which is attached to the daily passsenger train. Pickup and delivery service is given in connection with shipments of freight on the "hotshot" car. This car leaves Mandan each morning at

6 A. M. Mountain Time. It is on the track at the Bismarck Station from approximately 7:30 A. M. Central Time until noon. Although the railway has announced an 11 A. M. dead line, freight is received for shipment by this car until noon. The car is then moved back to Mandan where it is available for approximately two hours before it leaves as a part of the daily North Branch passenger train at 1 P. M. Mountain Time. This train runs upon regular schedule and reaches Killdeer at 6 P. M. Upon the return trip it leaves Killdeer at 5:40 A. M. and arrives in Mandan at 9:30 A. M. At each station upon this branch line the railway has contracts with local draymen who have agreed to make delivery of shipments by the "hotshot" car upon the day of their arrival at the local depot.

The volume of freight which is shipped into the territory by the "hotshot" car varies from three to seven tons daily and the l. c. l. shipments by the tri-weekly way freight vary from 8 to 12 tons on each trip. Pickup and delivery service is also furnished for l. c. l. shipments upon the way freight. This train leaves Mandan on Mondays, Wednesdays and Fridays at 7:15 A. M. and arrives in Killdeer at 3:15 P. M.

The question before the Public Service Commission upon the hearing of the instant application was whether public convenience and necessity required the proposed service. Section 49–1815, Rev Code 1943, provides: ". . . If the commission finds from the evidence that the public convenience and necessity require the proposed service, or any part thereof, it may issue the certificate as prayed for, or may issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by the certificate such terms and conditions as in its judgment the public convenience and necessity may require. Otherwise such certificate shall be denied."

In reaching its conclusions as to public convenience and necessity the commission is, by statutory direction, required to give consideration to certain stated factors. Section 49–1814, Rev Code 1943, provides:

"Before granting a certificate to a common motor carrier, the commission shall take into consideration:

1. Existing travel upon the route of the carrier;

2. The increased cost of maintaining the highway concerned;

3. The effect on other essential forms of transportation; and

4. Existing transportation facilities in the territory for which a certificate is sought.

In case it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

The provisions of § 49–1814, supra, constitute a "restriction upon the power of the commission in granting certificates of public convenience and necessity to motor trucks as common carriers of property." Tri-City Motor Transp. Co. v. Great Northern R. Co. 67 ND 119, 270 NW 100; Theel v. Great Northern R. Co. 72 ND 280, 6 NW2d 560. Thus it may be said that the legislature in declaring the public policy of this state has integrated the factors set forth in § 49–1814 into the public convenience and necessity equation. This being so, it must follow that public convenience and necessity do not require additional transportation service to a territory that already has reasonably adequate service or where the proposed service will create ruinous competition or materially impair the existing service to any part of the territory. Tri-City Motor Transp. Co. v. Great Northern R. Co. (ND) supra.

By the provisions of § 28–3219, Rev Code 1943, the district court, upon an appeal from the determination of an administrative agency, is directed to reverse or modify the decision of the agency if it finds, among other things, that "the findings of fact made by the agency are not supported by the evidence." Section 28–3221 provides:

"The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed, . . ."

Section 28–2732, Rev Code 1943, in so far as it is pertinent reads as follows: "On appeal in any action tried by the court, without a jury, whether triable to a jury or not . . . . The

supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, . . ."

We think it is clear that these statutes, construed together, require a trial de novo in district court upon the record, on an appeal from a determination of the Public Service Commission and also a trial de novo upon an appeal from the district court to this court where, as in this case, the statement of the case and the specifications of error demand a review of the entire case.

Appellant contends that the evidence does not support the commission's finding of public convenience and necessity in this case for the reason that it affirmatively shows that the existing carriers are furnishing the territory, for which the additional service is proposed, with reasonably adequate service and that the granting of the proposed certificate will result in a curtailment of service to that part of the territory which is not included in the proposal.

As has been already pointed out the evidence shows that the territory proposed to be served by the applicant already has daily service with respect to l. c. l. freight shipments and tri-weekly service on l. c. l. and car load shipments or a total of nine services each way, each week. On l. c. l. shipments the service is door to door as pickup and delivery are provided. It also shows that the total volume of l. c. l. freight transported into the territory by common carrier varies from 3 to 7 tons each trip on the daily service and from 8 to 12 tons per trip on the tri-weekly way freight. In addition to the common carrier, there are fourteen or more so called "shipper-owner" trucks operating in this territory. They are operated by wholesale merchandisers and each carries only the goods sold by its owner.

Some of petitioner's witnesses had complaints to make about the railway service. One said the railway refused to ship explosives by the "hotshot" car, another that it wouldn't accept gasoline for shipment except in small quantities, another that it refused oxygen and acetylene gas in tanks and another that it declined to accept certain types of farm machinery. Three witnesses complained that they had to wait overnight for the

delivery of goods and one that the railway was slow in settling claims. On the other hand five of petitioner's witnesses testified either that the railway service was not inadequate or that it was reasonably adequate. Another stated that he received heavy repair parts by the "hotshot" car and another that there were occasional delays but "the majority of the time the shipments arrive the same day as the orders are put in." Eight of petitioner's witnesses who testified that there was need for the proposed service did so upon the assumption that the shipper owner service to the territory was to be discontinued.

The witnesses for the protestant and appellant all testified either that the existing service was reasonably adequate or that the proposed service was a substantial duplication of the existing service. Two witnesses, both railway employees, gave their opinion that the daily freight service by rail would have to be discontinued if the business was split with a truck line and that this would deprive Fort Clark, Hensler, Sanger and Harmon of daily service as they are not on the route of the proposed truck line.

No witness stated that daily service by rail with door to door service was not reasonably adequate. The complaints which were made had to do with instances wherein that service had fallen down, by delayed delivery, by delay in settling claims and by the refusal of the railway to ship certain dangerous, bulky and heavy articles by the "hotshot" car. As to these complaints we think it sufficient to say that reasonable adequacy does not require or expect perfection. Certainly we can have no assurance that the proposed truck service would be entirely free from defects or that the trucks would accept goods for shipment which the railway now refuses to ship by the "hotshot" car. As to the claim that "shipper-owner" truck service to this territory would be discontinued, and that therefore additional service by truck would be needed, we find nothing in the record to justify such a conclusion. No one with any authority to speak testified that a discontinuation of the "shipper-owner" service was even contemplated.

The petitioner contends however, that the rail service is not

reasonably adequate for the reason that common carrier service by truck is an entirely different type of service than common carrier service by rail in that it is "speedier and more flexible"; and that no service is reasonably adequate which denies to the residents of any locality the benefits of truck service. There is however, no particularity in which the truck service is pointed out to be superior. Both the railway's time table and the truck-line's proposed schedule show approximately the same elapsed time between termini. Both furnish door to door service. We find nothing in the evidence to substantiate petitioner's generalizations as to greater speed and elasticity. Petitioner also contends that because under its proposal it will reach the end of the line at about the time the railway train commences its journey, it will make deliveries all along the line some five hours earlier than the rail service; and that the public is entitled to this "quicker service." As to shipments delivered to the carrier at Bismarck before 7 A. M. it is obvious that those delivered to the truck line would reach their destination five hours earlier than those that go by rail. It is equally obvious that as to shipments delivered to the carrier between 7 A. M. and noon those delivered to the railway would reach their destination nineteen hours earlier than those that go by truck. It is quite possible that after years of experience the railway's schedule is well adapted to the business needs of the territory. At least there is nothing in the record to the contrary.

In Tri-City Motor Transp. Co. v. Great Northern R. Co. 67 ND 119, 270 NW 100, we held that daily freight service by rail between Harvey and Minot was a reasonably adequate service. Taking into consideration the volume of traffic, the fact that door to door service is given, the absence of evidence of special circumstances which would require additional service and the possibility that the granting of the proposed certificate would result in a discontinuation of daily freight service to that part of the territory which the truck line would not serve, we see no reason why the standard of adequacy of service applied in that case should not also be applied here. We therefore hold that the Public Service Commission's finding of public convenience

426

and necessity in this case is not supported by the evidence. Accordingly, the judgment of the District Court is reversed.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.