[File Nos. 7196, 7197]

ANDREW FEIST, Respondent, v. NORTH DAKOTA WORK-
MEN'S COMPENSATION BUREAU, Appellant.

LENA FEIST, Widow of Andrew Feist, Respondent, v. NORTH
DAKOTA WORKMEN'S COMPENSATION BUREAU,
Appellant.

(42 NW2d 665)

Opinion filed May 19, 1950

*Wallace E. Warner,* Attorney General, and *P. B. Garberg,* Assistant Attorney General, for appellant.

*Strutz & Jansonius,* for respondents.

CHRISTIANSON, J. This opinion covers appeals in two separate proceedings that were instituted before the Workmen's Compensation Bureau by two different parties, namely, Andrew Feist and Lena Feist.

Andrew Feist applied to the Workmen's Compensation Bureau for compensation for an injury arising in the course of employment, that is, for a disease fairly traceable to the employment. The Compensation Bureau denied the claim on the ground that there was "insufficient proof or evidence that the disability suffered by the claimant was proximately caused by or fairly traceable to his employment." Andrew Feist died and his widow, Lena Feist, filed a claim for compensation for the death of her husband, Andrew Feist. Thereafter the Compensation Bureau ordered a rehearing of the claim filed by Andrew Feist and such claim and the claim of Lena Feist were consolidated for hearing and were heard together. The Workmen's Compensation Bureau made its order in each of the proceedings denying each of the claims. The Bureau made findings in the proceedings involving the claim filed by Andrew Feist that the proof

failed to show that the alleged disability of Andrew Feist was sustained in the course of employment or fairly traceable to the employment. The Bureau made findings in the proceedings involving the claim filed by Lena Feist that the alleged disability of Andrew Feist was not shown to have been sustained in the course of his employment and that his death was not shown to have resulted from an injury sustained in the course of his employment. Appeals were taken to the District Court of Burleigh County from the decision of the Bureau in each of the proceedings. On such appeals the appellant demanded a trial anew and asserted that the findings of fact of the Bureau were not supported by the evidence. Under the statutes providing for an appeal from the decisions of the Workmen's Compensation Bureau it was incumbent upon the trial court to review the evidence to ascertain and determine whether the findings of fact of the Compensation Bureau were or were not supported by the evidence; and if the court found that the findings were not supported by the evidence then it was incumbent upon the court to render decision accordingly and to require that the decision of the Bureau be modified or reversed as the justice of the cause might require. NDRC 1943, Sec. 28–3219; In re N. P. Ry. Co., 74 ND 416, 23 NW2d 49.

The Workmen's Compensation Law (NDRC 1943, Sec. 65–0102, subsections 8 and 9) provides:

"8. 'Injury' shall mean only an injury arising in the course of employment . . . . Such term, in addition to an injury by accident, shall include:

a. Any disease which can be fairly traceable to the employment. . . . The disease must be incidental to the character of the business and not independent of the relation of employer and employee. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence; . . . .

"9. 'Fairly traceable to the employment' when used to modify the term 'disease' shall mean only a disease which:

a. Arises under conditions wherein it is apparent to the rational mind upon consideration of all the circumstances that

there is a direct causal connection between the conditions under which the work is performed and the disease;

b. Can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; and

c. Can be fairly traced to the employment."

Pneumonia contracted by an employee incident to the performance of his work in the course of his employment is an "injury" compensable under the North Dakota Workmen's Compensation Act. Tweten v. N. Dak. Workmen's Compensation Bureau, 69 ND 369, 287 NW 304.

In the proceedings involving the claim filed by Andrew Feist the court found that in July 1946 Andrew Feist was an employee of the Checker Cab Company, Bismarck, North Dakota; that his occupation was that of a taxi driver, earning $40.00 per week; that on that day Andrew Feist contracted atypical pneumonia which was fairly traceable to the employment, he having suffered from exhaustion and exposure while in the course of his employment; that on the date he contracted such disease the Checker Cab Company, his employer, had duly complied with the North Dakota Workmen's Compensation Act and all acts amendatory thereof; that the said Checker Cab Company was a duly insured employer under the terms of the North Dakota Workmen's Compensation Act; and that all premiums due from said Checker Cab Company to the North Dakota Workmen's Compensation Fund had been paid. From the facts found the court concluded as a matter of law that the claimant was entitled to Workmen's Compensation payments from and after July 22, 1946, at the rate of $25 per week together with the doctor and hospital bills incurred and attorney's fees were allowed in the sum of $100.

In the proceedings instituted by Lena Feist the court found that Andrew Feist died on October 23, 1947, and that his death resulted from disability contracted by him in July 1946; that at the time of said disability the said Andrew Feist was an employee of the Checker Cab Company of Bismarck, North Dakota, his occupation being that of a cab driver and that he earned $40 per week; that Andrew Feist as a result of exhaustion and exposure sustained in the course of his employment con-

tracted atypical pneumonia which resulted in hypertension and was the cause of his death on October 23, 1947; that on the date of the alleged injury, Checker Cab Company, Bismarck, North Dakota, had duly complied with the North Dakota Workmen's Compensation Act, and all acts amendatory thereof; that the said Checker Cab Company was a duly insured employer under the terms of the North Dakota Workmen's Compensation Act; that all premiums due from said Checker Cab Company to the North Dakota Workmen's Compensation had been paid; that at the time of his death, Andrew Feist left surviving him, his widow, Lena Feist, and a minor child, William Feist, 16 years of age. That Lena Feist, the claimant, was wholly dependent upon the earnings of Andrew Feist for support at the time of his injury and death. From the facts found the court concluded as a matter of law that the death of said Andrew Feist resulted from a disease contracted in the course of, and fairly traceable to, his employment; that at the time of his disability the said Andrew Feist was earning $40 a week and that the claimant, his surviving widow, Lena Feist, is entitled to be awarded such sums per week as are provided by statute as a benefit for the death of said Andrew Feist, payable every four weeks until her death or until her remarriage; that in case of her remarriage there should be paid to her a lump sum equal to 156 weeks compensation; that said Lena Feist is entitled to payment of all claims in connection with the injury and resultant death of said Andrew Feist for which the Workmen's Compensation Fund is liable under the statute; and that warrants should be drawn in payment of said sums as provided by statute and that there be allowed $250 for services performed by the attorneys for the claimant.

The Workmen's Compensation Bureau has appealed from the judgments of the district court and demanded a review in this court of the entire case in each of the proceedings. NDRC 1943, Sec. 28-2732; Laws 1933, c. 208.

The trial judge announced his decision in each case in a memorandum opinion wherein he said:

"Andrew B. Feist was a man of about 50 years of age, by occupation a taxi operator. Prior to July 17, 1946, he had al-

ways been in good health. Prior to that date, he was employed by Abe Saunders, owner of the Checker Cab Company, Bismarck, North Dakota, as a taxi driver. The employer has complied with the conditions and requirements of the North Dakota Workmen's Compensation Act.

"About July 17, 1946, after operating the taxi—Feist came home, muddy and wet, tired and in an exhausted condition after his taxi had become stuck in the mud in the Park Hill Addition. He had worked hard trying to get his taxi out of the mud. He caught cold and went back to work, and three or four days later, about July 20, 1946, was brought home by employees of the taxi company, suffering with chills and a high fever.

"Dr. August C. Orr was called and prescribed for Feist, and on July 28, 1946, sent him to the hospital a very sick man. The doctor testified Feist had 'atypical pneumonia'. He left the hospital August 3, 1946, still ill.

"In October, 1946, Feist attempted to resume work but could only work two or three days a week. In February, 1947, he quit work because of his illness.

"He died October 23, 1947, after being ill since July 1946.

"Feist had 'atypical pneumonia' caused by exposure while in the course of his employment, and this brought on hypertension, culminating in a cerebral hemorrhage, causing his death.

"The only evidence offered was that by the claimant, the defendant Bureau offering no testimony.

"The facts are that Feist was in good health prior to July 17, 1946. After the exposure, he was never again well. The exposure, while in the course of his employment, is the only cause shown for his 'atypical pneumonia' and the hypertension that followed."

As stated by the trial judge the only evidence and testimony offered upon the hearing before the Bureau was that adduced by and in behalf of the claimant and, of course, that is the only evidence that was certified to and presented to the trial court.

The persons who testified upon the hearing before the Bureau were Lena Feist, the widow of Andrew Feist; Andrew Feist's daughter and son-in-law, who were living in the house occupied by Andrew Feist; and Doctor Orr, the doctor who treated An-

drew Feist. Lena Feist and the daughter and son-in-law were present and observed the condition of Andrew Feist when he returned home on July 17th. The testimony shows that the cab which Andrew Feist was driving on July 17th became mired or stuck in the mud and that in extricating the cab Andrew Feist became wet and muddy and quite exhausted; that when he came home he was exceedingly tired; that later he went to work but was not well and later complained of a cold; that some two or three days later he was brought home by two taxi drivers very ill and with a high fever. There are some differences between the witnesses as to the precise date this occurred. Andrew Feist's daughter testified positively that he was brought home by two taxi drivers on July 20th and that she called Doctor Orr and that he came and saw Andrew Feist that same evening. Doctor Orr places the time that he was called a couple days later. The differences in time are of little or no importance. On the important matters there was no difference in the testimony. Andrew Feist's widow and daughter testified that when he was brought home by the two taxi drivers he had fever and chills, complained of dizziness and headache and Doctor Orr who was called to see him that same evening testified that Feist had chills and high fever and complained of pain in the chest and that he (Doctor Orr) diagnosed the disease with which Feist was suffering as atypical pneumonia; that he thought Feist was too ill to be treated at home and that he desired to have him go to the hospital but that Feist was unwilling to do so and that the doctor then gave directions and provided medicine for home treatment; that on subsequent days the family called the doctor and he went to see Feist once or twice and that he then again insisted that Feist be hospitalized. Feist finally went to the hospital on July 28th and remained there until August 3rd. Doctor Orr testified that he should have remained longer but that he insisted on going home and that his unwillingness to remain in the hospital probably was actuated to some degree by his financial condition. The doctor testified that after Feist left the hospital on August 3rd he came to the office for further treatment. When asked for his opinion whether under the facts as shown to exist

in the case the exposure and exhaustion of Andrew Feist on July 17, 1946, brought about the atypical pneumonia from which he later suffered, the doctor stated that this could be a primary factor in it.

The trial court concluded that the disability for which Andrew Feist filed claim for compensation arose out of and was fairly traceable to his employment and that consequently it was an injury for which he was entitled to be compensated under the Workmen's Compensation Law. We agree with this conclusion. We think it is apparent from the evidence and circumstances that the disability for which Andrew Feist claimed compensation had its origin in an incident which arose in and was directly connected with his employment. The disease which he contracted and from which he suffered is fairly traceable to his employment.

The judgment appealed from in the proceeding involving the claim filed by Andrew Feist is affirmed.

On the appeal from the decision denying the claim filed by Lena Feist for compensation for the death of her husband, Andrew Feist, the trial court found that the findings of the Bureau were contrary to the evidence and that the claim should be allowed and paid. Upon the record presented on this appeal we are not prepared to hold that the findings of the Bureau to the effect that the proof adduced on the hearing before it was insufficient to show that the death of Andrew Feist was caused by the disability which he sustained in July 1946 are contrary to the evidence. We are of the mind that the evidence was not sufficient to show that the cerebral hemorrhage which caused the death of Andrew Feist was a result of the disease which he contracted because of exposure and exhaustion which he sustained in the course of his employment on or about July 17, 1946. There is some evidence tending to show a possibility that the disability might have had some connection with and contributed to the cerebral hemorrhage; but we do not believe that the evidence construed as a whole establishes as a reasonable probability that such disability was a proximate cause therefor. Whether the disability which Feist sustained in July 1946 was a proximate contributing cause of the cerebral hemorrhage which caused his

death in October 1947 is a question the answer to which involves factors which constitute the basis for diagnosis by persons skilled in the diagnosis of such disease. The evidence on this feature of the case is restricted and qualified. The only medical expert called to testify was the doctor who treated Andrew Feist. When asked "Would a man suffering from atypical pneumonia such as Andrew Feist had, would that in any way aggravate hypertension?" the doctor answered, "It is almost certain to." When asked "Would the hypertension in any way bring about the cerebral hemorrhage which he later died from?" the doctor answered, "As far as I know we would have to say yes." When asked "It is probable is it?" he answered "Yes." This is the extent of the testimony of a medical expert bearing upon the possibility or probability that the disability sustained by Andrew Feist in July 1946 had any connection with the cerebral hemorrhage from which he died. There is no evidence that the doctor or anyone took the blood pressure of Andrew Feist when the doctor was called to see him or at any other time or what examination was made to ascertain whether and to what extent Feist had hypertension. When asked whether there were complications which resulted from the pneumonia, the doctor answered:

"A. I couldn't say except that he was ill indefinitely from that time on. As I recall he never went back to work with any steadiness. I suggested to him that he go back to work.

Q. Did it later develop that he had hypertension?

A. Yes he did. I don't recall my findings on him.

Q. Do you know whether or not he was suffering from hypertension when he left the hospital?

A. I couldn't say. I don't know the bedside record."

The evidence shows without dispute that Andrew Feist had a cerebral hemorrhage on May 10, 1947, which resulted in the paralysis of one of his arms. On October 23, 1947, he had another hemorrhage from which he died.

While we do not believe that the evidence sustains the findings and decision of the trial court as to the claim for the death of Andrew Feist, we are not prepared to say that the disability

which Andrew Feist sustained in July 1946 may not have been a proximate contributing cause to his death. We believe rather that the question is one concerning which the parties should be given opportunity to submit further proofs. In short, we are of the view that the ends of justice require that the case predicated upon the claim of Lena Feist for compensation for the death of Andrew Feist should be remanded to the Workmen's Compensation Bureau with directions that the Bureau conduct further hearings upon the question whether the disease which Andrew Feist contracted in July 1946 and from which he later suffered was or was not a contributing proximate cause to the cerebral hemorrhage which caused his death on October 23, 1947.

NUESSLE, C. J., MORRIS, BURKE and GRIMSON, JJ., concur.