Claim of Emma FOSS (Death of Orphy Foss), Appellant,

v.

**NORTH DAKOTA WORKMEN'S COMPEN-SATION BUREAU, Appellee.**

Civ. No. 8949.

Supreme Court of North Dakota.

Jan. 31, 1974.

**520**

William W. Binek and Carlton G. Nelson, Grand Forks, for appellant.

Allen I. Olson, Atty. Gen., and David L. Evans, Sp. Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, for appellee.

PAULSON, Judge.

This is an appeal by Emma Foss from a judgment of the Grand Forks County District Court, which affirmed an order of the Workmen's Compensation Bureau [hereinafter Bureau] dismissing her claim for death benefits. Mrs. Foss filed her claim as the result of the death of her husband, Orphy Foss, on March 20, 1969.

On the morning of March 20, 1969, Orphy Foss was to start a new job as a finish carpenter with Anda Construction Company of Moorhead, Minnesota [hereinafter Anda], on a project in Grand Forks, North Dakota. A finish carpenter is one who is responsible for "finish carpentry", such as trimming windows, hanging doors, and installing shelf boards and baseboards. Because of the special equipment required for such jobs, Anda required finish carpenters to furnish all necessary tools except for extension cords and skill saws.

Even though Mr. Foss was to be doing non-finish carpentry for the first few days, he nevertheless rose early on the morning of March 20 and carried his tools from the basement of his home and loaded them in the trunk of his car. These tools included a large tool box weighing approximately 200 pounds, a table saw, skill saws, a jointer, levels, door-hanging equipment, and other miscellaneous tools.

Upon completion of this loading, and before sitting down to eat his breakfast, Mr. Foss complained to his wife of chest pains. After breakfast he drove to Anda's jobsite, arriving there at about 7:45 a. m., and was given work assignments by Mr. Gary Morse, the job foreman. Mr. Foss then took some small hand tools to his designated work area and spent the morning putting 2x4 trimmers alongside the doors and backing on the walls on which sheetrock could be nailed, and doing some insulating around windows.

At approximately 11:30 a. m., Mr. Morse talked to Mr. Foss and asked him if he wanted to go to lunch. Mr. Foss answered in the negative, saying that he usually had his lunch at twelve o'clock noon and that he would eat lunch in his car.

At approximately 7:30 that evening, two workmen returned to the Anda jobsite, where they noticed Mr. Foss's car still

parked in the street. Upon investigation they found Mr. Foss slumped over in his car, dead. His lunch was laid out in the car, unfinished.

The death certificate, which was filed with the clerk of the district court, was signed by Dr. Richard H. Leigh, the Grand Forks County coroner, who listed the immediate cause of Mr. Foss's death as myocardial arrest due to coronary occlusion and myocardial failure; and who estimated that death occurred at 4:00 p. m. on March 20, 1969. Chronic emphysema and asthma were listed as other contributing factors. No autopsy was performed.

On October 10, 1969, Emma Foss filed a claim with the Bureau for death benefits. Her claim was dismissed by the Bureau on April 16, 1970, and Mrs. Foss requested a rehearing, which was held on January 28, 1971, and which resulted in a second dismissal by the Bureau, on May 10, 1971. Mrs. Foss then appealed to the Grand Forks County District Court, which appeal was later dismissed without prejudice, pursuant to a stipulation for dismissal between her attorney and the attorney for the Bureau. After the dismissal by the district court, the matter was remanded to the Bureau for further evidence and Mrs. Foss's claim, on June 2, 1972, was again dismissed. Once again Mrs. Foss appealed to the district court, which, after a hearing, entered judgment affirming the order of the Bureau dismissing her claim.

The primary issue is whether sufficient evidence was produced by the claimant to prove that the death of Orphy Foss was causally related to his employment.

■ The Workmen's Compensation Bureau is an administrative agency and, as such, appeals from its decisions are governed by the Administrative Agencies Practice Act, Chapter 28–32 of the North Dakota Century Code. Section 28–32–19 of that chapter provides:

"*Scope of and procedure on appeal from determination of administrative agency.*—The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

In 1950 this court decided the case of Feist v. North Dakota Workmen's Compensation Bureau, 77 N.D. 267, 42 N.W.2d 665 (1950), which was an appeal involving two issues of fact: (1) whether the illness of the respondent's deceased husband with atypical pneumonia was fairly traceable to his employment; and (2) whether two cerebral hemorrhages suffered by the deceased husband, and his resulting death, were also fairly traceable to his employment. The first issue was disposed of by determining that the atypical pneumonia was fairly traceable to his employment. The second issue was not decided, because of the unsatisfactory state of the evidence, and the case was remanded to the Bureau

to give the claimant an opportunity to submit further proof.

In *Feist, supra* 42 N.W.2d at 666, Mr. Justice Christianson, writing the opinion of the court, construed § 28–3219, N.D.R.C.1943, [§ 28–32–19, N.D.C.C.], as follows:

"Under the statutes providing for an appeal from the decisions of the Workmen's Compensation Bureau it was incumbent upon the trial court to review the evidence to ascertain and determine whether the findings of fact of the Compensation Bureau were or were not supported by the evidence; and if the court found that the findings were not supported by the evidence then it was incumbent upon the court to render decision accordingly and to require that the decision of the Bureau be modified or reversed as the justice of the cause might require. NDRC 1943, Sec. 28–3219; In re Northern Pacific Ry. Co., 74 N.D. 416, 23 N.W.2d 49."

In the instant case, the district court reviewed the evidence contained in the record and determined that the finding of fact of the Bureau was supported by the evidence. That decision has now been appealed to this court.

■ We must review the decision of the district court in an appeal from a decision of an administrative agency in the same manner as we would review any case tried to that court without a jury. § 28–32–21, N.D.C.C.

■ The scope of judicial review of Workmen's Compensation Bureau decisions was ascertained by this court in the case of Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur., 171 N.W.2d 104 (1969), wherein it held, in paragraph 2 of the syllabus:

"The trial de novo in the district court on the record made before an administrative agency and in the Supreme Court on an appeal from the district court in an administrative agency proceeding, as it relates to a determination of the facts, is limited to determining whether there is substantial evidence to support the administrative agency's findings of fact."

Mr. Justice Erickstad, writing the opinion of the court, traced the history of judicial review of Workmen's Compensation Bureau decisions in North Dakota; and, concluding that the substantial evidence standard of judicial review was applicable in such proceedings, stated, in *Haggart, supra* 171 N.W.2d at 111:

"However, we are now inclined to believe that a trial de novo in the district court on the record made before the administrative agency and in this court on an appeal from the district court, as it relates to a determination of the facts, should be limited to determining whether there is substantial evidence to support the administrative agency's findings of fact. Any other construction of the statutes ignores the provision of § 28–32–19 which requires that after a hearing on an appeal from a decision of an administrative agency, the court shall affirm the decision of the agency unless it shall find that the findings of fact made by the agency are not supported by the evidence.

"If the provision in § 65–01–01 (originally § 1 of ch. 162 of the 1919 session laws) abolishing jurisdiction of the courts over workmen's compensation cases and the provision in § 65–05–03 (originally § 17 of ch. 162 of the 1919 session laws) making decisions of the Workmen's Compensation Bureau final are to have any meaning, § 28–32–21, providing for review in the Supreme Court, must be construed so as not to substitute the judgment of the Supreme Court for the judgment of the Workmen's Compensation Bureau."

The method of judicial review of Workmen's Compensation Bureau decisions was re-affirmed in Ambroson v. North Dakota

Workmen's Comp. Bur., 210 N.W.2d 85 (N.D.1973), in which this court held, in paragraph 2 of the syllabus:

"Our review on appeal of finding of fact of the Workmen's Compensation Bureau is limited to determining whether there is substantial evidence to support the Bureau's findings of fact."

■ We believe that the standard adopted in *Haggart* and in *Ambroson* is applicable to the instant case. Our review is therefore limited to a determination of whether there is substantial evidence to support the Bureau's finding that there was insufficient evidence presented to establish a causal connection between the death of Mr. Foss and his employment with Anda.

■ While it is true that the Workmen's Compensation Act was created to protect the workman and that its provisions should therefore be construed liberally in favor of the workman, it is also true that the Workmen's Compensation Act is not a health or life insurance fund or an accident insurance fund, except to a limited degree, and that it does not justify awards in cases of ordinary disease not arising in the course of the employment. Booke v. Workmen's Compensation Bureau, 70 N.D. 714, 297 N.W. 779, 781 (1941); Sandlie v. North Dakota Workmen's Compensation Bureau, 70 N.D. 449, 295 N.W. 497, 499 (1940); Dehn v. Kitchen, 54 N.D. 199, 209 N.W. 364, 368 (1926).

In State ex rel. Kusie v. Weber, 72 N.D. 705, 10 N.W.2d 741 (1943), the recipient of a workmen's compensation award brought an action against her employer for failure to pay the amount of the award. Discussing the construction to be given to the Workmen's Compensation Act, Mr. Justice Burr said in *Weber, supra* 10 N.W.2d at 744:

"While the workmen's compensation statute is to be liberally construed to effect its purpose (Booke v. Workmen's

Compensation Bureau, 70 N.D. 714, 718, 297 N.W. 779, 781) yet the terms of the statute can not be ignored (Wilhelm v. Narregang-Hart Co., 66 S.D. 155, 279 N.W. 549); and the plaintiff herein must show she was injured in the course of employment. Booke v. Workmen's Compensation Bureau, supra."

■ Accordingly, in any claim for workmen's compensation benefits the burden of proof is upon the claimant to show by a preponderance of the evidence that she is entitled to share in the fund and, where her claim is based on the death of an employee, the claimant has the burden of showing a causal connection between an injury arising in the course of employment and the death of the employee. § 65–01–11, N.D.C.C.; Kuntz v. North Dakota Workmen's Compensation Bur., 139 N.W. 2d 525, 527 (N.D.1966); *Booke, supra* 297 N.W. 779, ¶ 2 of the syllabus.

■ In the instant case, reliance is placed on the death certificate which lists the cause of death to be a myocardial arrest, referred to by the parties as a heart attack. The cause of death as shown by the death certificate is uncontradicted by any other evidence and, under our law, the death certificate is therefore prima facie evidence of the cause of death. § 23–02–40, N.D.C.C.; Brinkman v. Mutual of Omaha Ins. Co., 187 N.W.2d 657, 662 (N. D.1971).

What is meant by the phrase "myocardial arrest due to coronary occlusion" is that the heart stopped because a branch of the coronary arteries which supply blood to the main heart muscle (called the myocardium) was blocked, resulting in the death of that part of the heart muscle supplied by the obstructed artery.

■ While a myocardial arrest (also known as a myocardial infarction) may occur after exercise in some individuals, it

often occurs unassociated with physical activity. Lawyers' Medical Cyclopedia (of Personal Injuries and Allied Specialties), Revised Vol. 5, Part A, § 34.40, page 279. It is therefore difficult to establish the precipitating cause of such an affliction and the testimony of a medical expert is always desirable and in most cases indispensable to prove this issue. Podio v. American Colloid Company, 83 S.D. 528, 162 N.W.2d 385, 388 (1968); Peterson v. Ruberoid Co., 261 Minn. 497, 113 N.W.2d 85, 87 (1962); Blecatsis v. Manchester Gas Co., 103 N.H. 542, 176 A.2d 711 (1961).

In the instant case, the only opinion of a medical expert that appears in the record, other than that contained in the death certificate, is that of Dr. P. Roy Gregware, a specialist in internal medicine and cardiology who is associated with the Quain & Ramstad Clinic in Bismarck. In a letter to the Bureau, replying to its request for his opinion based on the facts in the instant case, Dr. Gregware stated:

"The deceased was an asthmatic of long standing in which we are assuming that a coronary was the cause of death. Statistically, sudden death of such an individual is most probably due to acute coronary occlusion and myocardial infarction, however, since no one was present at the time of death, we do not know the circumstances of death and as no autopsy was performed, we are not certain as to the cause of death. From the description of the deceased activity on the day of death, it appears that he engaged in his usual activity of employment. I assume that moving his tools and equipment is the usual procedure of the first day on a new job. According to the criteria of causality recently circulating to and accepted by the Cardiac Claims Committee Advisory to the North Dakota Workmen's Compensation Bureau, this case does not qualify as compensable for death occurring following exertion or strain not excessive or unusual for the individual."

Other evidence presented showed that Mr. Foss had had a medical history of chronic emphysema and asthma; that on the morning of his death he had carried some heavy tools from the basement of his home to his car and afterwards complained of chest pains; and that he then did light work for the rest of the morning, and died at 4:00 p. m.

A similar issue was before this court in Kuntz v. North Dakota Workmen's Compensation Bureau, 139 N.W.2d 525 (N.D. 1966), which involved a claim for workmen's compensation benefits for the death of the claimant's son. The deceased son was employed as a pinsetter at a bowling alley and, while so employed, was injured when struck on his ankle by a bowling pin. He was treated thereafter for pain in his leg and, approximately six weeks later, he died. Subsequently it was found that the immediate cause of his death was the rupture of an aortic aneurysm and the resulting abdominal bleeding.

In *Kuntz*, the Bureau entered an order rejecting the claim for death benefits on the ground that there was no causal connection between the injury suffered in the course of employment and the death caused by the ruptured aneurysm. On appeal to the district court, the Bureau's order was reversed and the Bureau appealed to this court. This court reversed the district court and reinstated the order of the Bureau on the ground that there was insufficient evidence to support the claim. In *Kuntz, supra* 139 N.W.2d 525, this court held in the syllabus:

"1. A claimant against the Workmen's Compensation Fund has the burden of establishing his right to participate therein.

"2. While the claimant has the burden of showing, by a preponderance of

the evidence, that such injury was received in the course of employment, causal relationship between injury and ensuing death need not be established with absolute medical certainty.

"3. A reasonable suspicion that there was a causal connection between the affliction from which the workman was suffering and the injury, is not enough. There must be positive evidence showing that the accident either caused or accelerated the effect of such affliction.

"4. A compensation award cannot be made on surmise, conjecture, or mere guess.

"5. The evidence in this case is examined, and it is held that such evidence is insufficient to establish a causal connection between injury received in course of employment and the death of employee."

Upon consideration of the entire record, it is our opinion that the evidence presented, which contained no medical testimony whatsoever in support of the claimant's position, was insufficient to prove a causal connection between Mr. Foss's employment with Anda and his death. We therefore hold that the finding of fact of the administrative agency, which was affirmed by the district court, was supported by substantial evidence.

The issue as to whether Mr. Foss was within the scope of his employment at the time of his death is moot, in view of our holding that there is insufficient proof of the causal connection between Mr. Foss's employment and his death.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.