458 So.2d 1347 (1984)
STATE of Louisiana, Appellee,
v.
Rodney E. CARLISLE, Jr., Appellant.
No. 16407-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
*1350 Campbell, Campbell & Johnson by James M. Johnson, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., A.L. Blondeau, Asst. Dist. Atty., Benton, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Rodney E. Carlisle, Jr. appeals a jury verdict finding him guilty of two counts of negligent homicide, in violation of LSA-R.S. 14:32. He challenges his convictions and sentences relying on eleven assignments of error. Finding no merit to his contentions, we affirm.
On July 21, 1983, defendant was involved in a head-on automobile collision on the Camp Zion Road in rural Bossier Parish. This accident resulted in the deaths of the driver and passenger of the other car, David and Annette Smallwood, brother and sister. Immediately after the collision, the defendant, with the aid of two persons summoned to the scene for help, tried unsuccessfully to free the two teenagers from the wreckage. Their bodies burned inside the car. According to the coroner, they died instantly from the impact.
The defendant received minor injuries in the wreck and remained hospitalized for four days. While in the hospital, approximately two hours and forty minutes after the wreck, Carlisle's blood alcohol level was determined to be .11. There were not witnesses to the accident except the defendant himself. The physical evidence, according to the accident reconstructionist who testified at trial, established that the defendant was in the improper lane of traffic immediately prior to the impact.

Assignments of Error Nos. 1 and 2
By these assignments, the defendant objects to the admission into evidence of statements made by him to two police officers shortly after the accident. He claims that absent a showing of compliance with *1351 the Miranda warning requirements, admission of the statements constitutes reversible error.
The prosecution may not use statements, whether exculpatory or inculpatory, that are the product of a custodial interrogation of a defendant unless it demonstrates the use of certain procedural safeguards designed to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964); Louisiana Constitution, Art. 1, § 13. Miranda warnings are required only when there has been a restriction of the person's freedom as to render him "in custody." It is that sort of coercive environment to which Miranda by its terms was made applicable and to which it is limited. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Custodial interrogation is defined by Miranda as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
The determination of whether a person has been taken into custody, detained, or deprived of his freedom of action in any significant way must be made by an objective test based on the totality of the circumstances. Factors relevant to the determination include: (1) whether the police officer had reasonable cause under LSA-C. Cr.P. Art. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; and (4) the belief of the interrogee that he was being detained, determined objectively. State v. Thompson, 399 So.2d 1161 (La.1981); State v. Ned, 326 So.2d 477 (La.1976).
The critical inquiry, then, in determining the validity of the defendant's contention, is whether the defendant was subjected to a custodial interrogation before he made the instant statements to the police officers.
The facts elicited during trial reveal that after the accident, the defendant left the scene on the back of a motorcycle and went to call his employer. By this time, the police and emergency vehicles had arrived at the scene. The investigators were told that the driver had left the scene. A radio message was broadcast alerting local police to be on the lookout for the missing driver. An off-duty police officer who lived near the point where the accident occurred heard the transmission and began to look for the driver. He noticed a man on a motorcycle at a convenience store. He questioned the man, who told him that the driver was inside the store making a phone call. The officer went inside and told the defendant he would have to return to the scene of the accident. The officer also told the person with whom the defendant was speaking on the phone, his employer, that he could pick Mr. Carlisle up at the scene.
On the way back to the accident site, defendant told the officer that he came around the curve and looked up and saw the vehicle, but did not have time to avoid the collision. Carlisle said that he then got out of his car and tried to wake the people in the other car, but could not. He also told the officer that he and the man who had eventually taken him to the store on the motorcycle had tried to remove the youths from the car, but were unsuccessful. He explained that he then left the scene to get help.
The second statement was made to another deputy, immediately after the defendant arrived back at the scene of the accident. The deputy approached the defendant and asked him what happened. Carlisle responded that he was not sure what happened because the wreck occurred so quickly. The officer stated that defendant told him "I was in the ditch and I looked up and there they were." The officer said that although this statement sounded unusual, he interpreted the statement to mean that the defendant was forced to drive into the ditch to avoid the accident.
In State v. Doucet, 443 So.2d 777 (La. App.3rd Cir.1983), the Third Circuit upheld *1352 the admission into evidence of statements taken from defendant by police within moments of their arrival at the serious automobile accident involving a fatality. Under the facts of that case, no significant detention of defendant was found.
Likewise, the circumstances surrounding the giving of these two statements indicate that Carlisle was neither taken into custody nor significantly deprived of his freedom of action when the statements were made. The officer that picked the defendant up at the convenience store testified that the defendant was never placed under arrest. He further stated that the defendant agreed to go back to the scene with him and never indicated that he did not want to return. The trial judge, during the motion to suppress, asked the officer what course of action he would have taken if Mr. Carlisle had indicated in any manner that he did not wish to return with him. The officer stated that he would have called his superior officer at the accident site and requested instructions. When Carlisle arrived at the scene, he was not given instructions about whether he could or could not leave the scene. After the conversation with the deputy which resulted in the second statement, defendant did in fact leave the scene with his employer to go to the hospital for treatment.
The most decisive fact undermining defendant's claim that he was in custody and, therefore, entitled to Miranda warnings, is the fact that, at the time of the questioning, the police were not even aware that a crime had been committed, but were merely trying to establish the facts surrounding a serious automobile accident. The questions propounded to the defendant by the police officers, i.e., "What happened?" were consistent with this objective. Defendant was not in custody as defined by Miranda when he made the instant statements.

Assignment of Error No. 3
Defendant complains that the trial court erred in sustaining the State's objection to testimony elicited during his cross-examination of the defendant's employer who was called as a witness for the State.
The following testimony transpired:
Q. You told Mr. Gray, [a D.A.'s investigator], did you not, that Mr. Carlisle had thrown this beer out in the woods?
A. Right.
Q. And during that conversation, did you ask Mr. Gray what he would have done?
A. I did. He was just
Q. And what did he say?
A. laughing about it
MR. BLONDEAU: I'm going to object to that, Your Honor. That's hearsay. It doesn't have anything to do with this case.
The objection was sustained because the response was inadmissible hearsay and additionally because the response was irrelevant.
A witness can testify only to facts within his knowledge. LSA-R.S. 15:463. Hearsay evidence is inadmissible except as allowed under statute or well recognized exceptions. LSA-R.S. 15:434; State v. Broussard, 391 So.2d 1167 (La.1980). The defendant has advanced no argument in support of his proposition that this hearsay evidence is admissible as an exception to the general rule of inadmissibility.
Additionally, to be admissible in a criminal proceeding, evidence must be relevant to a material issue. LSA-R.S. 15:434. Relevant evidence is defined as that evidence tending to show the commission of an offense and the intent, or tending to negate the commission of the offense or the intent. LSA-R.S. 15:441. Whether evidence is relevant is within the discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion. State v. Chaney, 423 So.2d 1092 (La.1983). State v. Williams, 431 So.2d 885 (La.App.2d Cir. 1983). Any testimony concerning what the investigator would have done if he had been involved in a serious car crash has no *1353 bearing on the commission of this offense. This assignment lacks merit.

Assignment of Error No. 4
During further cross-examination of the defendant's employer, Mr. Reeves, he was asked to relate some problems that he had encountered negotiating the curve where this accident occurred. He had previously testified that he had driven over this portion of the Camp Zion Road on many occasions. When the objection was made, the defense counsel was trying to elicit testimony as to a specific incident which occurred on this road.
Generally, a lay witness can only testify as to facts within his knowledge and not to impressions or opinions. However, a witness may be permitted to draw reasonable inference from his personal observations. LSA-R.S. 15:463; State v. Alexander, 430 So.2d 621 (La.1983). The evidence must however be relevant. The incident about which the witness was prevented from testifying occurred months after the accident. The trial court was within the ambit of his discretion in disallowing the testimony. Moreover, the defendant has failed to demonstrate prejudice in this case because the witness testified at length concerning his personal observation and experiences in negotiating this curve. This assignment of error lacks merit.

Assignments of Error Nos. 5 and 8
In the first of these related assignments, defendant challenges the trial court's failure to sustain an objection and request for mistrial based on an impermissible reference to "other crimes" evidence.
At trial, Aaron Jones was called as a prosecution witness. He testified that on the day of the accident, he was run off the Camp Zion Road by a car sometime between 4:30 and 4:40 p.m., approximately five to fifteen minutes before the collision. He stated that the car, a Mercury, which he described as exactly like the one the defendant was driving, forced him to drive his car into a ditch to avoid a collision. He further testified that he later saw the car that forced him off the road at the accident scene. Mr. Jones stated that by his measurements, the distance from the point where the accident occurred to the point where he landed in the ditch was 1.3 miles.
Generally, evidence of other acts of misconduct are not admissible because of the danger that the defendant may be convicted based on proof that he is of a general criminal character. The introduction of such evidence merely to prove that the defendant is a "bad man" involves constitutional problems because of the danger that a defendant may be tried for a charge of which he has no notice, for which he is unprepared, and which unfairly prejudices him in the eyes of the jury. State v. Kahey, 436 So.2d 475 (La.1983). However, evidence which forms part of the res gestae is always admissible in evidence. LSA-R.S. 15:447; State v. Mattheson, 407 So.2d 1150 (La.1981). Evidence of other crimes which are part of the res gestae of the charged offense is admissible without balancing the probative value of the evidence against its prejudicial effect and without pre-trial notice. State v. Jackson, 450 So.2d 621 (La.1984). To constitute res gestae, the circumstances or declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:448. The res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before and after the commission of a crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of a crime, if a continuous chain of events is evidence under the circumstances. State v. Kimble, 407 So.2d 693 (La.1981).
In State v. Hammontree, 363 So.2d 1364 (La.1978), the Supreme Court noted that evidence of speeding was probative of criminal negligent homicide, and further could constitute part of the res gestae of the crime. In State v. Sherer, 411 So.2d 1050 (La.1982), also a negligent homicide prosecution, the State sought to introduce the *1354 testimony of a witness who saw a truck like the one involved in the accident weaving on the highway and at one point causing another motorist to pull onto the shoulder of the road. According to the witness, the other vehicle ran off the road and into a ditch hitting a traffic sign. This incident occurred one-half mile from the wreck. The witness later saw this truck at the accident scene. Conceding that the evidence standing alone was not conclusive, the Supreme Court stated that the evidence had, however, sufficient probative value to permit the jury to consider it in its determination of the guilt or innocence of the accused.
Likewise, the testimony in this instance concerns an incident close in time and place to the accident which forms the basis of this charge. The evidence of the reckless driving has sufficient probative value to justify its admission into evidence. This assignment is without merit.
In a related assignment, the defendant contends that the trial court erred in not allowing him to present testimony which he claims would rebut the testimony of Mr. Jones. Mr. James H. Hope, the defense witness, testified that he was traveling on the Camp Zion Road on the afternoon of the accident when he met a car in the curve being driven in the middle of the road. The State objected to the relevance of the testimony and the objection was sustained. Although no formal proffer of evidence was made, defense counsel explained that the witness would testify that a different car was also being driven erratically on the same stretch of road on the day of the accident. Defense counsel sought through this testimony to impeach Mr. Jones' statement that he saw the defendant driving erratically immediately prior to the accident.
We believe that the fact that some other individual in a different car was driving erratically on the Camp Zion Road reflects neither on the guilt or innocence of the accused in this case. The happening of this extraneous event does not prove or disprove the commission of the instant offense of negligent homicide. The relevance of the testimony of the State's witness was clearly demonstrated. It was linked to the instant offense temporally as well as by location. Further, Mr. Jones identified the car that he nearly collided with as the same car he saw a short time later at the accident site. He also stated that he took particular note of the make of the car, as his brother had a car exactly like the one which forced him into the ditch, except that his brother's car was another color. In comparison, the crux of the evidence sought to be introduced by the defense concerns an entirely different event. The trial judge is responsible for determining admissibility related to issues of relevancy, to issues of collateral impeachment, and to issues or remote circumstances that may tend to shed light upon the ultimate issue in a circumstantial evidence case. State v. Humphrey, 412 So.2d 507 (La.1982). Here, the ultimate issue does not concern the defendant's identity, but rather whether he drove his vehicle in a criminally negligent manner so as to cause the death of two individuals. The proposed testimony does not tend to refute Mr. Jones' testimony nor does it negate any element of the offense. Considering the specificity of the State's witness and noting the defendant's opportunity to thoroughly cross-examine the witness and test his memory, we hold that the trial judge did not abuse his discretion in disallowing the defense witness's testimony as to this totally unrelated event. This assignment lacks merit.

Assignment of Error No. 6
By this assignment of error, defendant maintains that an expert witness called by the State, Jimmy Barnhill, was improperly allowed to testify as to the results of a blood alcohol test administered to the defendant.
Defendant contends that LSA-R.S. 32:661C dictates the order in which the State must present evidence relative to blood alcohol test results. The statute is reproduced below in pertinent part:

*1355 C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form.
Defendant argues that since the officer who advised him of his rights and obtained his signature on the written advisement form was not called until after Barnhill testified, the proper foundation had not been established for his testimony. His complaint specifically addresses the order of testimony concerning the test results. He asserts that the failure to present evidence in the order prescribed in LSA-R.S. 32:661C renders the results of the test inadmissible into evidence.
Neither the State nor the defendant can be controlled by the Court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible. LSA-C.Cr.P. Art. 773.
The record reveals that the state did in fact introduce evidence to show that Section 661C(1) was fully complied with. Thus, while it might have been preferable for the state to introduce the evidence in the order established by the statute, the evidence was "connected up." There is, therefore, no error. State v. Ryan, 358 So.2d 1274 (La.1978). Moreover, prior to the defendant's objection to the foundation, he had allowed the State to introduce into evidence without objection a copy of the Northwest Louisiana Crime Lab report containing the results of the blood alcohol test. This assignment lacks merit.

Assignment of Error No. 7
In this assignment, the defendant asserts that the State failed to prove that Charles Edward Anderson, Jr., the person who withdrew the sample of blood from Mr. Carlisle for purposes of testing its alcohol content, was qualified to do so under LSA-R.S. 32:664A.
LSA-R.S. 32:664 in pertinent part provides:
A. When a person submits to a blood test at the request of a law enforcement officer under the provisions of R.S. 32:662, only a physician, registered nurse, qualified technician or chemist may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath specimens.
Defendant contends that since Mr. Anderson was not licensed by the State to withdraw blood, the test results were erroneously introduced into evidence.
State v. Junell, 308 So.2d 780 (La.1975), held that the person drawing blood from the suspected inebriet and the person performing the analysis thereon had to meet the requirements concerning qualifications and certifications set forth in LSA-R.S. 32:663 and LSA-R.S. 32:664. State v. Bruins, 315 So.2d 293 (La.1975), held that without affirmative proof by the state of the requisite qualifications of both the analyst and the person withdrawing the blood, the results revealed in the report can have no evidentiary value.
LSA-R.S. 32:664 sets forth the requisite qualifications for the person withdrawing the blood sample. The person who withdraws the blood must be a physician, a registered nurse, qualified technician, or chemist. Unlike LSA-R.S. 32:663, which requires that the person who analyzes the *1356 blood possess a valid permit by the state, no such licensing requirement is made for withdrawal of the blood sample.
In this case, the person who withdrew the blood was a cardiopulmonary profusionist. As such, we believe that he was a "qualified technician" and therefore possessed the requisite statutory qualifications for withdrawing blood samples. This assignment is without merit.

Assignment of Error No. 9
The defendant contends that error was committed when the trial court denied his motion for a mistrial under LSA-C.Cr.P. Art. 770 during the testimony of defendant's wife. The motion for mistrial followed the testimony quoted below:
Q. Do you know Marshall Champion in Benton?
A. Yes.
Q. Did you ever report to Marshall Champion, you or your sister that your husband had been drinking and he wasthat you had to hide the gun because he was coming after you?
MR. JOHNSON: Objection.
A. No.
MR. JOHNSON: Your Honor, we'd move for a mistrial under Article 770, reference made to another incident.
THE COURT: Take the jury out, please, Mr. Sheriff.
LSA-C.Cr.P. Art. 770 requires a mistrial when a judge, district attorney, or court official refers directly or indirectly, before the jury, to another crime alleged to have been committed by the defendant, the evidence of which is inadmissible in the case before the court. However, LSA-C. Cr.P. Art. 771 states that if an inadmissible prejudicial remark is made before the jury by a judge, district attorney or court official and the remark is not within the scope of Article 770; or if the remark is made by a person other than the judge, district attorney or court official, even if the remark is within the scope of Article 770, the court, upon request, may simply admonish the jury to disregard the remark or comment. State v. Taylor, 430 So.2d 686 (La.App.2d Cir.1983).
Initially, we disagree with the defendant's contention that the prosecutor's question refers to another crime within the proscription of LSA-C.Cr.P. Art. 770. At most, the question makes an ambiguous reference to the defendant's wife having to prevent a possible crime. Her having to hide the gun arguably prevented an aggravated assault or battery. However, the question did not refer directly or indirectly to another criminal offense committed by the defendant which would warrant the drastic remedy of mistrial. Moreover, not only was this not evidence of another offense, the defense had opened the door in this regard upon direct examination of the defendant's wife. During that examination, she was specifically asked if she had ever seen "him act out of the way" while intoxicated. She categorically denied such conduct by him in response to two separate questions. Obviously by this line of inquiry, the defense attempted to establish that the defendant was not prone to aberrant behavior while intoxicated. It can certainly be argued that the prosecution's inquiry was a valid response to the defense inquiry. State v. Kelly, 456 So.2d 642 (La. App.2d Cir.1984).
We conclude that the defendant was not prejudiced by the question. The defense objection was sustained and the trial court admonished the jury with respect to the inquiry upon their return to the courtroom. Moreover, the witness's negative response to the question which occurred almost simultaneously with the objection being sustained obviated any arguable prejudice to the defendant. See State v. Harris, 383 So.2d 1 (La.1980). This assignment lacks merit.

Assignment of Error No. 10
The defendant objects to that portion of the jury charge which instructed the jurors that if there was at the time of the offense, .10 or more, by weight of alcohol, in the person's blood, it shall be presumed that the person was under the influence of *1357 alcoholic beverages. The defendant maintains that this charge constitutes an improper comment on the evidence by the trial judge. The charge given by the trial judge constituted a proper statement of the law and not a comment on the evidence. State v. Daranda, 388 So.2d 759 (La.1980). This assignment of error is without merit.

Assignment of Error No. 11
In this final specification of error, the defendant objects to the severity of the sentence imposed on him by the trial court. Rodney E. Carlisle, Jr. was sentenced to serve three years in the parish jail on each of the two counts of negligent homicide with the sentences to run concurrently. The defendant specifically complains that as a first felony offender he should have been considered a good candidate for probation.
The trial judge, in a lengthy sentencing proceeding, took note of the recommendation of the pre-sentence investigation report that the defendant not receive probation but should instead receive a period of incarceration. The trial judge found that a period of correctional treatment was warranted although he did not believe there was an undue risk that defendant would commit another crime during a period of suspended sentence or probation unless Carlisle again abused alcohol. He stated that any lesser sentence than that received would deprecate the seriousness of the crime, noting that the instant criminal offense caused the death of two individuals. He specifically stated that there were no substantial grounds tending to excuse or justify the defendant's conduct or establish a defense to it. The judge noted that the defendant had no prior juvenile history nor prior criminal activity before this incident. However, he underscored the nature of the offense and the gravity of the harm to the victims to justify his sentencing decision.
It is well settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App.2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied, 439 So.2d 1074 (La.1983). This sentence does not represent an abuse of discretion.
For the above stated reasons, the convictions and sentences of Rodney E. Carlisle, Jr. are affirmed.
AFFIRMED.