550 So.2d 922 (1989)
STATE of Louisiana, Appellee,
v.
Carter Kent BROWN, Appellant.
No. 20763-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Writ Denied January 19, 1990.
*923 Campbell, Campbell & Johnson by James M. Johnson, Minden, for appellant.
William J. Guste, Jr. Atty. Gen., Baton Rouge and Henry N. Brown, Jr., Dist. Atty., Benton, for appellee.
Before HALL, SEXTON and HIGHTOWER, JJ.
SEXTON, Judge.
Defendant Carter Kent Brown appeals his conviction of aggravated rape following a trial by jury, arguing seven assignments of error. Finding no merit to any of these, we affirm his conviction and sentence.
The victim's ordeal began shortly after midnight on March 18, 1988, when the defendant entered the emergency room of the Richland Parish Hospital in Delhi, Louisiana, seemingly in pain and claiming that he had suffered a back injury shortly before his arrival at the hospital.
The victim, an emergency room nurse, prepared the necessary paperwork and was about to examine the defendant when he displayed a very realistic replica of a .45 caliber handgun and demanded narcotic drugs. The victim advised the defendant that there were no narcotics in the emergency room but that she would provide him some from another source in the hospital.
Defendant initially doubted but eventually accepted the victim's protestations that there were no narcotics in the emergency room. The defendant then ordered the victim to empty a drawer full of emergency room "code" drugs into a plastic wash basin. "Code" drugs are those drugs used primarily to stabilize patients in life-threatening situations. The defendant then ordered the victim to exit the emergency room with him and directed her to a nearby Volkswagen where his girlfriend was waiting.
The three left the hospital and drove west on Interstate 20 to Webster Parish, where defendant exited the Interstate and drove north on Louisiana Highway 7. After unsuccessfully trying to exit the highway at two driveways where he confronted locked gates, defendant drove onto a side road and pulled over.
He then bound and gagged the victim and attempted to direct her across the ditch into the woods. The victim became entangled in the underbrush and, because she *924 was unable to extricate herself as a result of being bound, the defendant decided to drive farther down the road to find a better place to cross. There, he directed the victim across the ditch into the woods. He then removed the victim's shoestrings in order to bind her wrists and ankles more securely.
After the victim was securely bound and gagged, the defendant suggested to her that she wanted to have sexual intercourse with him. The victim indicated to the contrary, but to no avail. Threatening her if she should cry out, the defendant then raped the victim. After again threatening her should she report the incident, defendant departed.
The victim waited until she heard the defendant's car depart, then freed herself. She heard defendant's car return shortly thereafter and feared that he had returned. Defendant did not return to the victim's location, however, but drove away.
The victim then left the woods and sought assistance at a nearby residence. The police were contacted and the defendant and his girlfriend were arrested shortly thereafter, not far from where the victim was left in the woods.

CHANGE OF VENUE
The defendant argues that the district court erred in denying his motion for change of venue. Defendant argues that extensive pre-trial publicity and his own local notoriety, resulting from the recent and highly publicized murders of his aunt and uncle in the same area, combined to deprive him of a fair trial. In his motion for appeal, defendant did not designate the transcript of the hearing on his motion.
The pertinent statute regarding change of venue is LSA-C.Cr.P. Art. 622:
Art. 622. Grounds for change of venue
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
In State v. Brown, 496 So.2d 261 (La. 1986), the Louisiana Supreme Court interpreted this article to mean the following:
Although defendant is not entitled to a jury that is totally ignorant of the case to be heard, Art. 1, § 16 of the Louisiana Constitution does grant him a right to trial by an impartial jury.
... A defendant must prove more than community awareness of the facts surrounding his case. He must show that there exists a prejudice in the collective minds of the community that would make a fair trial impossible. State v. Wilson, 467 So.2d 503 (La.1985), [cert. denied 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985), rehearing denied 474 U.S. 1027, 106 S.Ct. 585, 88 L.Ed.2d 567 (1985)]; State v. Felde, 382 So.2d 1384 (La.1980); and State v. Sonnier, 379 So.2d 1336 (La.1979).
State v. Brown, 496 So.2d at 263.
Although the trial court possesses a broad range of discretion in this area, we are required to make an independent evaluation of the facts to determine whether the accused received a fair trial, unfettered by outside influences. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
In Mills, the defendant was convicted by a jury on one count of aggravated burglary, nine counts of aggravated rape, two counts of aggravated crime against nature, one count of armed robbery, and two counts of attempted second degree murder. Although the record of that case, as in the instant appeal, did not contain a transcript from the hearing on defendant's motion, the minutes from the hearing disclose that eight members of the community, selected at random, were questioned by both the defense and the prosecution. In addition, four newspaper articles from the parish newspaper relating to the offenses were *925 introduced into evidence. This court affirmed the district court's denial of the defense motion:
Our review of the record, including the colloquy between the attorneys and potential jurors on voir dire, fails to show the existence of prejudice in the public mind which would deprive defendant of a fair and impartial trial.
State v. Mills, supra, at 941.
In the instant appeal, a review of the transcript of the voir dire discloses that the first question regarding potential jurors' preexisting knowledge of the case was not asked until well into the voir dire. Thereafter, only a small number of questions concerning such pre-existing knowledge were asked. None of the answers given by potential jurors disclosed any substantial prejudice in the mind of the community such that defendant would be unable to get a fair and impartial trial. Indeed, none of the jurors seemed to be more than vaguely aware of the case and only a couple of the jurors knew any of the players in this drama. Given this virtual lack of knowledge of or interest in this case by members of the community, defendant was not entitled to a change of venue. This assignment of error is without merit.

EVIDENCE OF PSYCHIATRIC TREATMENT
Defendant argues that the district court erred in sustaining a state objection which excluded testimony by defendant's witness, a forensic psychiatrist, with respect to proposed treatment for defendant if he were found not guilty by reason of insanity.
Defendant argues that the jury needed to be able to consider his proposed treatment in order to satisfy itself that society would be adequately protected if he were found not guilty by reason of insanity. He further argues that not to admit this evidence denied the defendant due process.
The state argues that the jury essentially received this evidence because defendant's previous trial for armed robbery, where he was found not guilty by reason of insanity, was discussed at the instant trial. The state further points out that defendant's expert was permitted to testify as to the issue of insanity because he opined that the defendant could distinguish right from wrong at the time of the rape. Defendant's expert also tended to doubt the defendant's claim of not remembering having raped the victim. In addition, the jury was carefully instructed on what legal procedures would take place if defendant was found not guilty by reason of insanity.
Defendant cites generic jurisprudential pronouncements on the law of insanity, but offers no authority which supports the relevancy of testimony regarding proposed treatment in the event defendant was found not guilty by reason of insanity.
The testimony which defendant sought to elicit was not relevant to any of the issues before the court. Even with regard to the issue of insanity, the type of treatment which the psychiatrist would have proposed for the defendant was not relevant to whether the defendant could distinguish right from wrong at the time of the rape. The district court was correct in not allowing the offered testimony; this assignment of error is without merit.

EVIDENCE OF NEEDLE MARKS
Defendant argues that the district court erred when it permitted Jimmy Starkey, an investigator with the Webster Parish Coroner's office, to testify regarding whether or not he found any fresh needle marks on the defendant's arms when he examined him on the morning following the rape. In support of his claim, he asserts that the witness was neither a medical doctor nor a registered nurse and did not have the expertise to give such an opinion.
The state argues that it was the defendant who originally asked the witness about injection marks during cross-examination, which was further pursued on re-direct and re-cross. The state further asserts that all of this took place without objection. The allegedly objectionable testimony occurred during the state's rebuttal following testimony by the defendant that he had injected drugs prior to the rape.
*926 The witness testified on cross-examination that he found evidence of previous injections on both the defendant's arms and ankles, but that those were old needle "tracks." He testified on redirect examination that none of the tracks were fresh and he found no evidence of dried blood or recent injections. Defendant did not object at any point during cross or redirect examination to either the questions or the answers concerning "tracks" on defendant. Indeed, defendant raised the issue once again, on re-cross examination, and the witness indicated that none of the injection marks appeared to have been made recently.
On rebuttal, Mr. Starkey testified that he is a emergency medical technician (EMT) licensed by the State of Louisiana, that he administers IVs, and that he owns and operates Bayou Ambulance Service in Minden. When he was asked by the prosecution whether any fresh needle marks were found on the defendant, defense counsel objected on the basis of the witness's lack of expertise. The prosecutor argued that the witness could testify as to what he observed, but did not tender him as an expert. The objection was overruled and the witness was permitted to answer.
Generally, a lay witness can only testify as to facts within his knowledge and not to impressions or opinions. However, a witness may be permitted to draw reasonable inferences from his observations. State v. Carlisle, 458 So.2d 1347 (La.App. 2d Cir. 1984), writ denied, 463 So.2d 1316 (La. 1985). In the instant case, the fact of recent injections or the lack thereof was explored on cross examination by defense counsel during the prosecution's case in chief. The defendant furthered the issue by testifying that he had injected drugs shortly before the rape, something which the prosecution was entitled to rebut.
In State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), reversed on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) and State v. Washington, 364 So.2d 949 (La.1978), the Louisiana Supreme Court approved of a police officer testifying as to "track marks" found on a defendant at the time of arrest.
In the instant case, the witness is an investigator for the parish coroner. In addition, he is a licensed emergency medical technician and is familiar with intravenous injections. Under those circumstances, the witness was obviously qualified as an expert, though not tendered as such. Even if he wasn't tendered as an expert, he was entitled, as a layman, to testify as to his observations following a physical examination of the defendant and the reasonable inferences from those circumstances. This assignment of error is without merit.

SPECIAL JURY INSTRUCTION
Defendant argues that the district court erred in failing to give his special jury charge concerning the definition of a "dangerous weapon" and its application where a crime is committed while defendant is "armed" with a toy pistol.
Defendant argues that, under State v. Byrd, 385 So.2d 248 (La.1980), the definition of a dangerous weapon excludes a toy gun. His argument assumes that, had the jury been charged that a dangerous weapon does not include a toy gun, the jury would have convicted his client of forcible rape rather than aggravated rape.
The state points out that the district court gave a jury charge on the definition of a dangerous weapon and that the requested charge was not an entirely complete statement of the law.
A trial judge is required to give a requested charge which does not require qualification, limitation, or explanation and is not included in general charges or another special charge if it is wholly correct and pertinent. LSA-C.Cr.P. Art. 807; State v. Beck, 445 So.2d 470, 476 (La.App. 2d Cir. 1984), writ denied, 446 So.2d 315 (La.1984); State v. Pettaway, 450 So.2d 1345, 1368 (La.App. 2d Cir.1984), writ denied, 456 So.2d 171 (La.1984); State v. Hobdy, 494 So.2d 1321, 1328 (La.App. 2d Cir.1986), writ denied, 502 So.2d 110 (La.1987).
The definition of aggravated rape, LSA-R.S. 14:42, in pertinent part, is as follows:
*927 § 42. Aggravated rape
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
. . . .
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
. . . .
[Emphasis added.]
The definition of "dangerous weapon," found in LSA-R.S. 14:2(3), is as follows:
"Dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.
In light of the fact that the district court instructed the jury on the definition of a dangerous weapon, the jury could have concluded that a toy pistol is indeed not a dangerous weapon. However, that conclusion would not have precluded the jury from convicting defendant of aggravated rape. Even though the defendant was not armed with a "dangerous weapon," the jury could have concluded nonetheless that he was guilty of aggravated rape because he had made "threats of great and immediate bodily harm" to the victim, "accompanied by apparent power of execution." LSA-R.S. 14:42 A(3). Despite that the defendant was not armed with a dangerous weapon, he appeared to be armed with a dangerous weapon, thus apparently able to carry out his threats to kill or "get" the victim.
Even if it were error not to instruct the jury with defendant's special charge, it was a harmless error in light of the general instructions given and the fact that defendant's conduct was proscribed by a separate subsection of the statute. Accordingly, this assignment of error is without merit.

POST-TRIAL MOTIONS
Defendant argues that the district court erred when it failed to grant defendant's motions for post-verdict judgment of acquittal, new trial, and in arrest of judgment. These assignments of error essentially address the sufficiency of the evidence used to convict the defendant. The defendant urges that, when the evidence is viewed in the light most favorable to the prosecution, a rational jury should have concluded that defendant could not distinguish right from wrong at the time of the offense or, in the alternative, that defendant was guilty of forcible rape and not aggravated rape. The state argues that the evidence adduced at trial amply supports a conviction for aggravated rape.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Captville, 448 So.2d 676 (La.1984).
The evidence in the record, when viewed in a light most favorable to the prosecution, clearly establishes that defendant could distinguish right from wrong at the time of the offense and that defendant is guilty of aggravated rape and not forcible rape. The definition of forcible rape, *928 in contrast to the definition of aggravated rape reproduced above, is as follows:
§ 42.1. Forcible rape
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
The main thrust of defendant's argument is that the gun with which he was armed was not a real gun, but simply a replica. A rape may be aggravated for more than one reason. In this situation, the victim was prevented from resisting the rape because the defendant made threats of great and immediate bodily harm, and he had the "apparent" power of execution of those threats. LSA-R.S. 14:42 A(2). Had the victim been aware that the gun was not real, she may have resisted the act and could conceivably have prevented it.
In State v. Selman, 300 So.2d 467 (La. 1974), sentence vacated, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), rehearing den., 429 U.S. 890, 97 S.Ct. 248, 50 L.Ed.2d 173 (1976), on remand for sentencing, 340 So.2d 260 (1976), the defendant encountered the two victims and their boyfriends on a sand bar. He represented himself to be a policeman, claimed to be armed, ordered the boys to stay along the shore, then ordered the victims into some nearby bushes. There, the defendant ordered the victims to disrobe, then raped them both. There was ample evidence that defendant stated that he had a gun and made numerous threats to kill the victims unless they submitted. The victims were in fear of great and immediate bodily harm, accompanied by apparent power of execution, regardless of the fact that the defendant did not actually have a gun.
In State v. James, 431 So.2d 1075 (La. App. 2d Cir.1983), writ den. 439 So.2d 1076 (La.1983), the defendant robbed and kidnapped the victim from a convenience store and took her to another location, where he demanded that the victim have sexual intercourse with him. The victim would not submit, however, until the defendant put his gun in the back seat of the automobile. This court affirmed the defendant's conviction, noting that
The threat of receiving great bodily harm continued even after the defendant placed the gun on the back seat.... Defendant was in effective control over the victim because of her position in the car and his ready access to the pistol had she made an attempt to escape.
State v. James, supra, at 1080.
In the case at bar, the victim testified that at the time the defendant took her into the woods, she was bound and gagged. The defendant then took her shoestrings and secured her even more. The victim further testified that the defendant had the "gun" in the waistband of his pants while securing her bindings, although the defendant testified that he had placed the gun under the seat of the car. Under either scenario, the victim could not have removed herself from the situation without risking that the defendant would make use of what appeared to be a gun, which was located either on his person or a short distance away in his automobile. The circumstances of this case clearly support defendant's conviction for aggravated rape.

INSANITY DEFENSE
Finally, there is no merit to defendant's claim that he could not distinguish right from wrong at the time of the rape. The defendant's recall of even minute circumstances of that evening is quite clear; however, he either denies or fails to recall having raped the victim. His selective memory of the evening in question appears highly suspicious and, indeed, even his own psychiatrist doubted the veracity of defendant's version of what transpired that evening. Even though the jury was not required to accept the psychiatrist's opinion of defendant's ability to distinguish right from wrong at the time of the rape, the doctor's opinion conforms to the facts of the case.
In addition, defendant put on no evidence whatsoever of his inability to distinguish *929 right from wrong. His only expert testified contrary to his position. The record clearly supports that the defendant could distinguish right from wrong at the time and that a verdict of not guilty by reason of insanity is inappropriate.

CONCLUSION
We conclude that there is no merit to any of defendant's arguments. For the reasons discussed above, defendant's conviction and sentence are affirmed.
AFFIRMED.