No. 45,119

State of Kansas, *Appellant,* v. L. E. Carter, *Appellee.*

(446 P. 2d 759)

Opinion filed November 9, 1968.

*Russell E. Grant,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellant.

No appearance by appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal by the state from an order of the trial court dismissing a case in which appellee-defendant, L. E. Carter, was charged with driving a motor vehicle while under the influence of intoxicating liquor under the provisions of K. S. A. 8-530.

The question presented requires an interpretation of the terms "physician" or "'qualified medical technician," as used in K. S. A. 8-1003 which reads:

"Only a physician or qualified medical technician acting at the request of the arresting officer can withdraw blood of any person submitting to a chemical test under this act."

Following his arrest, the defendant, with his consent, was taken by a Kansas Highway Patrol Trooper to the Sedgwick County Hospital. Dr. Edgardo Advincula, at the request of the trooper, withdrew blood from defendant for the purpose of performing a test to determine alcoholic content. When the results of the test were offered in evidence at the trial defendant objected on the sole ground that Dr. Advincula was not a "physician" or "qualified medical technician" within the meaning of 8-1003, and that the results of the test were not admissible into evidence to show the alcoholic

content of defendant's blood. There was no contention that procedure in extracting the blood was incorrect. The objection was sustained by the trial court.

After the state rested its case defendant's counsel moved the court to dismiss because the results of the blood test were not admitted, and none of the witnesses called by the state submitted his opinion as to whether or not defendant was under the influence of intoxicating liquor; and further the state submitted no evidence of any sobriety test tending to show intoxication of defendant. Defendant's motion was sustained and the case dismissed.

On appeal the state contends the trial court erred in ruling that Dr. Advincula was not a "physician" or "qualified medical technician" within the meaning of those terms as used in 8-1003.

Dr. Advincula testified that he was a medical doctor; that he had received a degree in medicine from Santa Domas University in the Philippines in March 1963. He further testified that after receiving his medical degree he successfully completed an examination given by the Educational Council for Foreign Medical Graduates, which qualified him to come to the United States for further training; that he entered training at the Perth Amboy General Hospital in Perth Amboy, New Jersey, as an intern in medicine. After completing his internship he accepted a residency specializing in internal medicine at St. Francis Hospital in Wichita, and that he was presently in the second year of that residency. He further testified that in connection with his residency at St. Francis Hospital he was working on a rotation or assignment system at the Sedgwick County Hospital in Wichita; and that while on duty at the Sedgwick County Hospital, in the early morning hours of December 31, 1966, he extracted blood from the defendant, at the request of a trooper, for the purpose of administering a blood alcohol test. He also testified that he performed such services as delivering babies and working in the emergency room; and that he had on various occasions withdrawn blood from individuals, brought to the Sedgwick County Hospital by police officers, for the purpose of performing a blood alcoholic test.

Upon cross-examination Dr. Advincula testified that he was not licensed to practice medicine in the State of Kansas and that he had not taken any examination or gone through procedure of any type to become admitted to the practice of medicine in this state.

He further testified that he was not a medical technician, but rather he was a medical resident in training.

The state took exception to the trial court's ruling and argues on appeal that Dr. Advincula, as a second year medical resident in internal medicine, is either a "physician" or "qualified medical technician," or both, insofar as 8-1003 is concerned.

We agree with the position taken by the state.

Defendant's argument to the trial court was that since Dr. Advincula testified he was not a medical technician, but rather a resident in training, he could not be considered as a "'qualified medical technician" within the meaning of the statute. We believe that Dr. Advincula was merely classifying his status in medicine as a resident in training as distinguished from a medical technician, rather than saying he was not qualified to extract blood as a medical technician.

Although the legislature chose the title "qualified medical technician" in specifying those persons authorized to withdraw blood under 8-1003, we find no statutory or case law definition of that title in this jurisdiction and none is cited to us.

In Vol. 1, Dictionary of Occupational Titles, Second Edition, (1949) Definitions of Titles, page 838, prepared and published by the United States Employment Service, a medical technician is defined as one who performs medical duties in a hospital or medical laboratory making various laboratory tests. Certainly, the possessor of a doctor of medicine degree, with the training and experience testified to by Dr. Advincula, must be classified within the purview of "qualified medical technician" as set out in 8-1003.

In enacting 8-1003 the legislature chose not to preface the term "physician" with the word "licensed" as was done in other laws of this state. For example see K. S. A. 72-5384, K. S. A. 72-5381(a), now K. S. A. 1968 Supp. 72-5381(a), and K. S. A. 72-5385. In the statutes referred to the intention that a "physician" be "licensed" is unequivocally expressed.

As used in the Uniform Narcotic Drug Act, K. S. A. 65-2501, the term "physician" is defined as meaning any person authorized by law to treat sick and injured human beings in this state.

Practice of medicine by a person while serving an internship or residency in an accredited hospital is recognized and such a person is excluded from the application of the healing arts act in K. S. A.

65-2872(d) the effect of which exempts an intern or resident serving in an accredited hospital from the licensing requirements of the act.

In his argument to the trial court, defendant's counsel relied upon K. S. A. 72-5384(c) (dealing with certification of health of school personnel), wherein a physician is defined as a person licensed to practice medicine or surgery in the state of Kansas. The argument is not persuasive since the definitions set out in 72-5384 are qualified by the prefatory limitation "as used in this act."

A perusal of Kansas statutes indicates that where the legislature intended to impose a restriction in its use of the term "physician," it expressed its intention in a precise and unequivocal manner by the insertion, as a preface, the term "licensed" or imposed the qualification "authorized by law" as in 65-2501. It appears the legislature did not intend to impose any restriction by its use of the unqualified term "physician" in 8-1003, or it would have expressed its intent in the unequivocal language used in other statutes. To assume that the legislature intended such a restriction, but merely failed to include the proper language, is an assumption we think untenable.

A question, almost identical, was presented in *People v. Stanton,* 228 N. Y. S. 2d 858, where the extraction of blood from a defendant was performed by an intern. Section 1194, subdivision 3, par. a of Vehicle and Traffic Law of the State of New York (amended in 1968), provides: "No person except a physician . . . shall be entitled to withdraw blood for the purpose of determining the alcoholic content therein." In holding an intern to be a "physician" as the term is used in the statute referred to, the court noted that the New York legislature had used the restrictive terms "duly licensed" or "licensed physician" in other New York statutes, but chose not to do so in the statute referred to. The court stated it was thus quite clear that the legislature was aware of the distinction and difference between the term "physician" and the term "duly licensed physician."

The New York holding appears to be in accord with prevailing authorities. In 70 C. J. S., Physicians and Surgeons, § 1, we find:

"*An intern* is a physician; he is a graduate of a medical school with a doctor's degree, although, it may be, not licensed to practice his profession in the ordinary way by so holding himself out to the public. . . ." (p. 807.)

The language quoted above was used by the court in defining the term intern with respect to the application of the privileged

communications rule in *Eureka-Maryland Assur. Co. v. Gray,* 121 F. 2d 104.

From his testimony we conclude that Dr. Advincula meets the requirements of both a "physician" and "qualified medical technician" as those terms are used in K. S. A. 8-1003.

The appeal is sustained.