BARRY, Judge.
Charles Taylor, charged with vehicular homicide, La.R.S. 14:32.1, filed a motion to suppress the results of his blood test indicating .20 percent alcohol content which was denied. Taylor seeks writs arguing the blood tests are inadmissible for two reasons: 1) the state failed to prove which model Becton-Dickinson blood kit had been used; 2) the state failed to show that the Department of Public Safety had promulgated rules concerning the qualifications of persons authorized to draw blood and that Officer Barrios met those qualifications.
La.R.S. 32:662 declares that a person operating a motor vehicle with .10 percent or more blood alcohol content is presumed to be under the influence of alcoholic beverages. See also La.R.S. 14:32.1 A(l). “Chemical analyses of the person’s blood ... shall have been performed according to methods approved by the Department of Public Safety_” La.R.S. 32:663. To utilize the statutory presumption of intoxication in a criminal prosecution, the state must show that detailed procedures to insure the integrity and reliability of the chemical test have been promulgated. State v. Tanner, 457 So.2d 1172 (La.1984).
The Department of Public Safety has set out the most recent relevant rules in Volume 11, page 260 of the 1985 Louisiana Register: “Blood drawn for the purpose of determining the alcoholic content therein shall have been taken with the contents of the ‘B-D Blood Alcohol Kit’ Number 4990 or 4991 ... (manufactured by Becton-Dickinson Division ...) or similar blood collection kit approved by the Louisiana Department of Public Safety and Corrections. ‘B-D Blood Alcohol Kits’ or similar blood collection kits as approved will be made available to all law enforcement agencies, by Louisiana State Police.” See also 4 Louisiana Register, No. 10, p. 393 (1978).
Here Officer Barrios, who drew the blood, testified he used a Becton-Dickinson kit supplied by the Louisiana State Police, but could not identify the type number to be 4990 or 4991. Applicant argues the failure to prove which B-D kit was used bars admission of the test results.
*252 In State v. Green, 418 So.2d 609 (La.1982), the blood collection kit utilized was not one of the types set out in the Department’s rules, but an identical kit except that it contained liquid rather than solid anti-coagulant. Noting that the rule describing the type of blood collection kits is only a foundational requirement for admission of the blood test result that the analysis itself be performed according to the prescribed method, the Supreme Court concluded that “the statute does not prohibit introduction of test results merely because a different anti-coagulant or collection kit than that approved by the department was employed.” 418 So.2d at 613.
Here the kit was clearly identified by Officer Barrios as a Becton-Dickinson kit although the outer wrappings with the type number had been discarded. The officer also stated that the kit used, just as the other “B-D Blood Alcohol Kits” he carried in the trunk of his car, had been provided by the Louisiana State Police. The kit utilized to draw Taylor’s blood was clearly one approved by the Department of Safety and disseminated by the State Police pursuant to the rules promulgated to insure reliability of blood testing.
La.R.S. 32:664 declares that “only a physician, registered nurse, qualified technician or chemist may withdraw blood for the purpose of determining the alcoholic content therein.” Taylor argues that the state’s failure to show that the Department of Public Safety has promulgated rules relating to the qualifications of persons authorized to draw blood and that Officer Barrios met those qualifications bars admission of the test results. We disagree.
Jurisprudence specifies that before the state avails itself of the statutory presumption of intoxication arising from the chemical analysis of a defendant’s blood, it must show it has promulgated detailed procedures to insure the integrity and reliability of the chemical test including provisions for repair, maintenance, inspection, cleaning, certification, chemical accuracy and that it has strictly complied with the procedures. State v. Tanner, supra; State v. Morrison, 392 So.2d 1037 (La.1980); State v. Jones, 316 So.2d 100 (La.1975). The Department of Public Safety has in fact promulgated such safeguarding rules relating to aspects of maintaining and certifying the machines, the blood collection kits and the certification requirements for those who analyze the blood and maintain the machines.
La.R.S. 32:663 provides that the chemical analysis of blood “shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose.” Drawing blood and analyzing blood are two separate acts, each requiring a different type of expertise. One skilled at drawing blood (with its invasion of the body and the possibility of pain and/or infection) would not be qualified to analyze the blood under La.R.S. 32:663 absent a valid permit for that purpose. State v. Junell, 308 So.2d 780 (La.1975). The requirement of a permit is conspicuously missing in R.S. 32:664 relating to those authorized to withdraw blood obviously because it was deemed less significant to protect the integrity of the test.
The only requirement to be met by a person (not a physician, registered nurse or chemist) withdrawing blood is that he be a “qualified technician.” No permit or license is required.
When faced with whether a certain individual met this requirement in State v. Welch, 468 So.2d 599, 601 (La.App.2d Cir.1985), writ denied 474 So.2d 1303 (La.1985), the Second Circuit looked to the dictionary definition:
‘Technician’ has been defined as ‘a specialist in the technical details of a subject or occupation or one who has acquired the technique of an art or other area of specialization,’ Webster’s New Collegiate Dictionary, Eighth (1976); and as ‘one versed in the technicalities of a subject,’ The American College Dictionary, (1966).
*253 Using that definition the court concluded a cardiopulmonary profusionist who had worked as a phlebotomist for five years after specialized training was a qualified technician. See also State v. Carlisle, 458 So.2d 1347 (La.App.2d Cir.1984), writ denied 463 So.2d 1316 (La.1985). In State v. Fortner, 478 So.2d 673 (La.App.2d Cir.1985), the court held a hospital technician whose job included drawing blood was a qualified technician under La.R.S. 32:664.
We do not find the term “qualified technician” to be vague or to require clarification through the promulgation of further rules. It is certainly possible for a court to determine whether a person meets the statutory requirement.
Here Officer Barrios had undergone training in drawing blood samples from the New Orleans Police Department Emergency Medical Technicians Unit. Through Os-chner Foundation he attended five weeks of classes in phlebotomy with a class of nurses at the Jefferson Parish Vocational Technical Institute. After graduation he worked with other phlebotomists at Ochs-ner Hospital, East Jefferson and Charity Hospitals on the rounds to draw blood samples for lab tests. He was also certified by the state as a phlebotomist. Officer Barrios was certainly a “technician” according to the definition. His training and experience clearly show he was “qualified” to extract a blood sample for testing.
We find no bar to the admission of the blood test results at trial and therefore deny this writ. This motion to suppress was properly denied.
WRIT DENIED.