Vincent D. **WIEDERHOLT**, Petitioner and Appellant,

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION**, Respondent and Appellee.

Civ. No. 900103.

Supreme Court of North Dakota.

Oct. 31, 1990.

Weiss, Wright, Paulson & Merrick, Jamestown, for petitioner and appellant; argued by James A. Wright.

Gregory B. Gullickson (argued), Asst. Atty. Gen., Bismarck, for respondent and appellee.

ERICKSTAD, Chief Justice.

Vincent D. Wiederholt appeals from the order for judgment[1] of the District Court for Ransom County issued February 6, 1990, affirming the decision of the hearing officer for the North Dakota State Highway Commissioner (now Director, North Dakota Department of Transportation) which order suspended Wiederholt's driver's license for a period of two years. We affirm.

On August 26, 1989, Wiederholt was arrested for being in actual physical control of a motor vehicle while intoxicated in violation of section 39–08–01, N.D.C.C. Wiederholt was discovered lying passed out in his pickup which was located in Wiederholt's farmyard and approximately 100 feet from the roadway.

The relevant facts leading up to the arrest are undisputed. During the afternoon of August 26, 1989, Officer Richard Geiss of the North Dakota Highway Patrol, was directing traffic for the Centennial Fair Days Parade in the city of Lisbon. At approximately 5:15 p.m., Officer Geiss was informed that a yellow pickup bearing the license plate BCL082 had been observed weaving down the roadway and forcing vehicles off the road. Officer Geiss was given a description of the driver and informed that the pickup had continued down Highway 32 until reaching Will's Body

---

1. Wiederholt's notice of appeal, dated February 27, 1990, states that his appeal is from an order for judgment dated February 6, 1990, affirming the decision of the hearing officer. A subsequent judgment consistent with that order was entered on February 6, 1990, and this appeal is therefore properly before us. *Olson v. Job Service of North Dakota*, 379 N.W.2d 285, 287 (N.D. 1985); *Dunseith Sand and Gravel Co., Inc. v. Albrecht*, 379 N.W.2d 803 (N.D.1986); *Klem v. Greenwood*, 450 N.W.2d 738 (N.D.1990); *Greenwood, Greenwood & Greenwood v. Klem*, 450 N.W.2d 745 (N.D.1990).

Shop, at which time the driver attempted to proceed west.

After running a check of the vehicle's license plate, Officer Geiss attempted to locate the pickup. Upon reaching the intersection near Will's Body Shop which had been described by the informant, Officer Geiss followed the tracks of a vehicle which appeared to have been weaving from one side of the road to the other.

The tracks continued to be visible in the loose gravel for approximately one mile and led directly into Wiederholt's farmyard. Upon reaching the Wiederholt farmyard, Officer Geiss observed a pickup matching the description and bearing the license number which had been provided by the informant. Additionally, a pair of feet were observed sticking out of the door on the driver's side of the vehicle.

Officer Geiss entered the farmyard and stopped his patrol car near the pickup. As the officer approached the pickup he could smell a strong odor of alcohol and observed Mr. Wiederholt passed out on the seat. Officer Geiss succeeded in waking Wiederholt who responded by asking what was happening. Wiederholt was informed of the officer's and informant's observations to which Wiederholt responded by stating he had driven from Gwinner, North Dakota. Officer Geiss observed that the keys were still in the ignition of the vehicle and noted that the road from Gwinner was the same road on which he had observed the erratic tire tracks and from which he had approached the farmyard. Additionally,

Officer Geiss could clearly distinguish his own footprints in the loose dirt around the pickup but observed no other footprints.

After helping Wiederholt walk to the patrol car, Officer Geiss concluded that no field sobriety tests could be performed because Wiederholt was in such a severely impaired condition. The officer asked Wiederholt if he had consumed any alcohol while parked in the farmyard or if he currently had any alcohol in his mouth, to which Wiederholt responded "no" and indicated that he had consumed the alcohol earlier that day. Wiederholt was then placed under arrest for violation of section 39–08–01, N.D.C.C.,[2] and transported to the sheriff's office for an Intoxilyzer test. The results of the Intoxilyzer test indicated a blood-alcohol content of .22 percent by weight.

On September 25, 1989, an administrative hearing was held to determine whether or not Chapter 39–20, N.D.C.C., had been complied with and, if so, whether or not Wiederholt's driving privileges should be suspended and to what extent. At the close of the hearing, after a review of the evidence, the hearing officer concluded that Officer Geiss had reasonable grounds to believe Wiederholt had violated section 39–08–01, N.D.C.C., that Wiederholt was properly arrested prior to being given a test to determine the alcohol content of his blood, and that a fairly administered Intoxilyzer test was administered disclosing at least a .10 percent blood-alcohol content. As a result, Wiederholt's driving privileges were sus-

---

**2.** Section 39–08–01, N.D.C.C., reads in part as follows:

"*39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.*

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

b. That person is under the influence of intoxicating liquor.

c. That person is under the influence of any drug or substance or combination of drugs or substances to a degree which renders that person incapable of safely driving.

d. That person is under the combined influence of alcohol and any other drugs or substances to a degree which renders that person incapable of safely driving.

The fact that any person charged with violating this section is or has been legally entitled to use alcohol or other drugs or substances is not a defense against any charge for violating this section, unless a drug which predominately caused impairment was used only as directed or cautioned by a practitioner who legally prescribed or dispensed the drug to that person."

pended for a period of two years.[3]

Wiederholt appealed the decision of the administrative officer to the District Court for the County of Ransom. The district court affirmed the decision of the administrative officer. Wiederholt now brings this appeal, contending: 1) the trial court erred in determining that Wiederholt was guilty of driving under the influence of alcohol, and 2) the trial court erred in affirming the administrative hearing officer's determination that the offense of actual physical control applies to private property as well as public roads.

■ Our review of an administrative decision is governed by the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. *See Heinrich v. North Dakota State Hwy. Com'n*, 449 N.W.2d 587, 588 (N.D.1989); *Greaves v. North Dakota State Hwy. Com'r*, 432 N.W.2d 879, 881 (N.D.1988); *Dodds v. North Dakota State Hwy. Com'r*, 354 N.W.2d 165, 168 (N.D.1984). In following the provisions of Chapter 28–32 we do not review the findings of the district court, but instead we examine the record of the administrative agency. *Heinrich*, 449 N.W.2d at 588 (citing *Greaves*, 432 N.W.2d at 881). When reviewing the decision of an administrative hearing, we are limited to determination of the following:

"(1) Is the decision of the agency in accordance with the law? (2) Is the decision of the agency in violation of the appellant's constitutional rights? (3) Have the provisions of Chapter 28–32 been complied with? (4) Was the appellant given a fair hearing? (5) Are the findings of fact supported by a preponderance of the evidence? (6) Are the conclusions of law sustained by the findings of fact? (7) Is the agency decision supported by the conclusions of law? See Sec. 28–32–19, N.D.C.C. See also *Dodds v. North Dakota State Highway Com'r*, 354 N.W.2d 165 (N.D.1984)."

*Greaves v. North Dakota State Hwy. Com'r*, 432 N.W.2d at 881. Additionally,

we will exercise restraint in our review of the findings of an administrative agency to insure that we do not substitute our judgment for that of the agency. *Dodds*, 354 N.W.2d at 168.

■ Wiederholt's primary contention in this appeal to our Court is that because section 39–10–01, subsection (2), N.D.C.C., does not include the offense of being in actual physical control of a motor vehicle, as distinguished from the offense of driving a motor vehicle while under the influence of intoxicating liquor, section 39–08–01, N.D.C.C., does not extend to offenses occurring on private property. Although the issue of whether or not section 39–08–01, N.D.C.C., applies to private property was raised in *State v. Novak*, 338 N.W.2d 637 (N.D.1983), it was not raised in this frame of reference. Wiederholt contends our decision in *Novak* was a gross oversight, and that the case at hand presents this Court with an opportunity to correct the error it made approximately seven years ago in *Novak*.

In *Novak*, we concluded that sections 39–08–01 and 39–10–01 must be construed together as a prohibition against being in actual physical control of a vehicle while under the influence of alcohol on private property as well as the highways. *Id.* at 640. In doing so, we said:

"To do otherwise '... would defeat the purpose of the statute which seeks to protect all against the real danger caused by drunken drivers whether on the highway, a parking lot or elsewhere within the state.'"

*Id.* (quoting *State v. Valeu*, 257 Iowa 867, 134 N.W.2d 911, 913 (1965)). In *Novak*, we were faced with the issue of whether or not the "elsewhere" language in section 39–10–01, N.D.C.C., extended the offense of actual physical control to private property. We concluded that it did.

Wiederholt notes that section 39–08–01 has undergone a number of revisions since our decision in *Novak*, while section 39–10–

---

3. In light of Wiederholt's prior driving record, which included convictions for both actual physical control while under the influence and driving while under the influence, the administrative officer determined Wiederholt's driving privileges should be suspended for two years.

01 has remained relatively unchanged.[4] Wiederholt asserts that because the "critical language" of section 39–10–01 has not been expanded to include the offense of actual physical control of a motor vehicle while under the influence of alcohol, the legislature has intended to prevent the application of this offense to private property.

In *Thomas*, we recognized that the 1983 legislature had amended section 39–08–01, N.D.C.C., to separate the offenses of driving under the influence and being in actual physical control, while section 39–10–01, N.D.C.C., remained unchanged. *State v. Thomas*, 420 N.W.2d 747, 753 (N.D.1988). Even so, we believed that the legislature did not intend to alter our decision in *Novak*. *Id.* Since our decision in *Thomas*, the legislature has amended section 39–08–01, N.D.C.C., to include both offenses in the same paragraph (39–08–01, subs. 1.). Had this issue been raised in this form prior to our decisions in *Novak* and *Thomas*, we concede for purposes of discussion only that we might have concluded that the legislature did not intend to extend the offense of being in actual physical control to private property, but we are past that moment of decision and now must be guided by the fact that the legislature has not pointedly and definitely acted to show its disagreement with our decisions.

We recognize that if the legislature is not satisfied with our interpretation of a statute, it is free to amend that statute to reflect its true intentions. *See generally,*

*Colling v. Hjelle*, 125 N.W.2d 453 (N.D. 1963) (In *Colling*, we interpreted section 29–06–16, N.D.C.C., which led to a statutory change adopting the language of the dissent). In *Colling*, this Court had to determine the legislative intent of section 29–06–16, N.D.C.C. *Id.* at 455–57. In doing so, the majority of this Court held that a lawful arrest without a warrant for the violation of a misdemeanor offense could not be based upon the arresting officer's reasonable belief that the apprehended person committed the offense. *Id.* at 456. Instead, this Court held that the legislature intended that warrantless arrests for misdemeanor violations would be lawful only when an offense occurred within the officer's presence and that it was not sufficient that the officer reasonably believed that an offense occurred in the officer's presence. *Id.* Subsequently, apparently unsatisfied with this interpretation of section 29–06–16, the legislature amended the statute to permit an arrest without a warrant when the arresting officer has a reasonable belief that the offense has occurred in the officer's presence. *See* § 29–06–16, N.D.C.C. This action by the legislature discloses that it knows how to make its intent known when it disagrees with a decision of this Court.[5] As the legislature has not amended the pertinent statute in this case to plainly disclose its intention contrary to our opinions, we adhere to our previous opinions. In so doing, we extend appropriate respect to precedent and to the undergird-

**4.** See S.L.1985, ch. 429, § 8; S.L.1987, ch. 460, § 7; S.L.1989, ch. 158, § 14.

**5.** Further evidence of the legislature's ability to make its intent known can be found in a review of section 28–32–19, N.D.C.C. In *Wolf v. N.D. Workmen's Comp. Bureau*, Justice Paulson noted the following:

"Prior to the 1977 amendment of § 28–32–19, N.D.C.C., this court upheld those findings of fact by the Bureau which were supported by substantial evidence. *Foss v. North Dakota Workmen's Compensation Bureau*, 214 N.W.2d 519 (N.D.1974). After the 1977 amendment of § 28–32–19, N.D.C.C., only those findings of fact by the Bureau which are supported by a preponderance of the evidence can be upheld by this court on appeal. To meet this standard, a finding of fact by the Bureau must be supported by the

greater weight of the evidence. *Benzmiller v. Swanson*, 117 N.W.2d 281 (N.D.1962)."
267 N.W.2d 785, 786–87 (N.D.1978). Prior to the 1977 amendment, section 28–32–19, N.D.C.C., read in part that we were to uphold the findings of fact made by the Bureau unless "the findings of fact made by the agency are not supported by the evidence." *Foss*, 214 N.W.2d at 521. We interpreted this to require the Bureau's findings to be supported by substantial evidence. *Id.* at 522–23. In 1977, the legislature amended section 28–32–19, N.D.C.C., to require the Bureau's findings to be upheld upon determining that they were supported by a preponderance of the evidence. *Wolf*, 267 N.W.2d at 786. This provides further evidence that the legislature knows how to make its intent known when it is dissatisfied with a decision of this Court.

ing objective of our statutes, that of "deter[ring] individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers." See *Novak*, 338 N.W.2d at 639. See also, *Thomas* 420 N.W.2d 747; *State v. Schuler*, 243 N.W.2d 367 (N.D.1976).

Wiederholt asserts that the offenses of being in actual physical control and driving under the influence are separate and distinct. He further argues that the subsequent merger of the separate subsections into one subsection "does not serve to alter the fact that a violation on the basis of actual physical control of a motor vehicle is a separate and distinct offense from driving while under the influence of an intoxicating liquor." Because of this, he believes the legislature intended to exempt the offense of actual physical control from application to private property by not listing it within subsection 2 of section 39–10–01, N.D.C.C.[6] In *Thomas*, this Court recognized that the two offenses had been separated by the legislature. 420 N.W.2d at 753. However, we said that it was our belief that the "legislature did not intend to alter the law or overrule *State v. Novak*," which approved the application of the provision relating to being in actual physical control to private property. *Thomas*, 420 N.W.2d at 753. We are of the same opinion still.

Wiederholt also asserts that the application of the offense of actual physical control to private property renders the phrase "or upon public or private areas to which the public has a right of access for vehicular use" in section 39–08–01 meaningless. We fully addressed this issue in *Novak*. *Novak*, 338 N.W.2d at 638–40. We said:

"The primary purpose of statutory construction is to ascertain legislative intent. *Morton County v. Henke*, 308 N.W.2d 372, 375 (N.D.1981). In construing statutory provisions, '... the proper course in all cases is to adopt that sense of the words which promotes in the fullest manner the policy of the legislature in the enactment of the law, and to avoid a construction which would alter or defeat that policy.' 73 Am.Jur.2d Statutes § 153 (1974)."

*Id.* at 639. We have addressed the purpose of section 39–08–01 on a number of occasions. *See, e.g., State v. Ghylin*, 250 N.W.2d 252 (N.D.1977). We believe the intent of the actual physical control offense is to deter intoxicated individuals from entering their vehicles and ultimately becoming a menace to others. *State v. Schuler*, 243 N.W.2d 367 (N.D.1976). As we are not convinced that the legislature has indicated that our previous construction of the law is in error, we adhere to our previous opinion.

Wiederholt further asserts that our decision in *Thomas* requires a finding that the vehicle was upon a highway or upon public or private areas to which the public has a right of access for vehicular use. *See Thomas*, 420 N.W.2d at 753. In *Thomas*, we found the vehicle was parked in an area to which the public had a right of access for vehicular use, to wit: "we note ... that a portion of the gun club parking lot is used by the public as an access route to the public plinking range." *Id.* at 754. Wiederholt contends that because, in *Thomas* this Court made the determination that the vehicle was parked in an area to which the public had access, we must make this determination in every case. However, this interpretation ignores what we concluded in *Thomas*. In *Thomas* we said that the pur-

---

**6.** Section 39–10–01, N.D.C.C., reads as follows:

"*39–10–01. Provisions of title refer to vehicles upon the highways—Exceptions.*

1. The provisions of this title relating to the operation of vehicles apply to the operation of vehicles upon highways or other places open to the public for the operation of vehicles except where a different place is specifically referred to in a given section.

2. The provisions of this title, or equivalent ordinances, relating to reporting of accidents, careless driving, exhibition driving,

drag racing, reckless or aggravated reckless driving, driving while under the influence of intoxicating liquor or controlled substances, or fleeing or attempting to elude a peace officer apply upon highways and elsewhere."

In *State v. Novak* we determined that the language "elsewhere" found in subsection 2 of section 39–10–01, N.D.C.C., extended section 39–08–01, N.D.C.C., to private property. 338 N.W.2d 637 (N.D.1983). This extension included the offense of being in actual physical control. *Id.*

pose of section 39–08–01 was "to protect the public against the real danger caused by drunken drivers whether on the highway, a parking lot or *elsewhere within the state*." [Emphasis added.]. *Thomas*, 420 N.W.2d at 753–54. Furthermore, we reiterated our belief that the language "elsewhere within the state" includes private property. *Id.* at 753 (citing *Novak*, 338 N.W.2d at 638). Merely because we found that Thomas was parked in a private area to which the public had access does not mean we have abandoned the application of section 39–08–01, N.D.C.C., to private property in general. Our opinion in *Thomas* would be inconsistent in its parts if it were read to adopt our decision in *Novak* on one page, and then read to require a finding that the vehicle was located in an area where the public had a right to access on the next page.[7] We conclude that the extension of section 39–08–01, N.D.C.C., to private property first articulated in *Novak* is still correct.

We do not believe that the application of the offense of being in actual physical control of a motor vehicle to private property is an unnecessary and unprotected intrusion upon private property. Persons in their houses or curtilages are still protected from unlawful search and seizure, and from arrest without probable cause. *See, e.g., Lubenow v. North Dakota State Highway Com'r*, 438 N.W.2d 528 (N.D. 1989); *State v. Manning*, 134 N.W.2d 91 (N.D.1965). In this case, the hearing officer for the North Dakota State Highway Commissioner concluded, among other things, that the arresting officer acted properly and with probable cause. After a review of the evidence, the administrative officer determined Wiederholt had indeed violated section 39–08–01, N.D.C.C. Wiederholt does not contest that he was under the influence of alcohol when found in his automobile. His only contention is that the offense for which he was charged does not apply to private property. We have concluded that the offense does apply to private property.

Notwithstanding what we have heretofore said herein concerning our reasons for affirming the findings of the hearing officer, there is yet another basis for affirming the administrative order.

When all the facts presented at the administrative hearing are considered, it becomes apparent Wiederholt drove his vehicle upon the highway while under the influence of intoxicating liquor, and, in the process, had to have been in actual physical control of his motor vehicle upon the highway under the influence of intoxicating liquor. The facts presented to the administrative hearing officer, as described in greater detail earlier in this opinion, are clear and not contested by Wiederholt. On August 26, 1990, Officer Richard Geiss of the North Dakota Highway Patrol was provided with an anonymous tip concerning a possible drunken driver. The tip included a description of the driver, a description of the vehicle, the license number of the vehicle, and the direction the vehicle was traveling upon the highway. Shortly after initiating his search, Officer Geiss, by following tire tracks in the gravel, discovered the vehicle which had been described in the tip. Upon approaching the vehicle, Officer Geiss observed Wiederholt passed out in the front seat, with his feet sticking out of the driver's side door, and also noted the smell of alcohol. Wiederholt was awakened, and he subsequently admitted to having driven the vehicle. In light of these facts, we believe the hearing officer's conclusion that Officer Geiss had reasonable grounds to believe that Wiederholt had committed the offense of being in actual physical control of a vehicle when he arrested him, is supported by a preponderance of the evidence.

For the reasons stated in this opinion, the order is affirmed.

VANDE WALLE and MESCHKE, JJ., concur.

---

7. In *Novak* we held that section 39–08–01, N.D.C.C., applied to private property. *See, Novak*, 338 N.W.2d at 638–39. The decision in *Novak* does not require a finding that the area in which the vehicle is found to be accessible to the public. *Id.*

LEVINE, Justice, concurring in result.

This case should be decided and affirmed on the limited ground that there is a preponderance of evidence in support of the hearing officer's conclusion that the police officer had reasonable grounds to believe Wiederholt was in actual physical control. After all, it doesn't take a Sherlock Holmes to deduce from the circumstantial evidence of fresh tire tracks all over a road that lead to a vehicle, previously identified, now at rest, with the driver in it, that the driver was in actual physical control before the vehicle came to rest.

Not satisfied with resolving this case on a narrow ground, the majority, instead, needlessly roams far and wide over rocky jurisprudential terrain. I refer specifically to *State v. Novak*, 338 N.W.2d 637 (N.D. 1983), which answered *only* the question asked in that case—whether the statutory language "elsewhere throughout the state," contained in NDCC § 39–10–01(2) applied to an open field, privately owned.[1] It did *not* analyze or address the unasked question whether section 39–10–01(2) applied at all to the offense of actual physical control. *Novak* assumed it did. However, if the court had addressed that issue, it would have had to conclude from the express language of the statute in effect at the time of the offense and from the legislative history of the subsequent amendments that section 39–10–01(2) does not apply to being in actual physical control of a vehicle. The legislature simply did not intend to criminalize conduct constituting actual physical control if that conduct took place on property not accessible to the public. The *Novak* court said it relied on subsequent amendments as an aid in arriving at the correct meaning of the statutes it was construing. 338 N.W.2d at 640.

During the legislative session preceding the decision in *Novak*, section 39–10–01 was amended. S.L.1983, ch. 436, § 1. The bill, as introduced, made three changes relevant to this discussion. First, it added to section 39–10–01(1) the language "or other places open to the public for the operation of vehicles" to make the motor vehicle laws apply not only "to the operation of vehicles upon highways," but also to "other places open to the public for the operation of vehicles." Second, it added actual physical control and implied consent to the list of offenses specifically made applicable "upon highways and elsewhere" in section 39–10–01(2). Third, it shortened the phrase interpreted in *Novak* from "and elsewhere throughout the state" to "and elsewhere." H.B. 1647, 49th Legislative Assembly (1983).

The House Transportation Committee was told the bill was introduced to make traffic laws applicable on frozen lakes. Minutes of House Transportation Committee, Feb. 10, 1983 (comments of Bruce Burkett, Vice–President, North Dakota Peace Officers Association). The bill's sponsor, Representative Hjelle, was asked why actual physical control and implied consent were included in subsection two. He told the committee that the staff of the Legislative Council added that language when they drafted the bill for him. *Id.* The committee deleted the actual physical control and implied consent references. I deem that deletion meaningful and fairly indicative of an intent not to include actual physical control.

Before the Senate Transportation Committee, the evil sought to be avoided through the amendment was identified, again, as driving on frozen lakes. Minutes of Senate Transportation Committee, March 4, 1983 (comments of Wilmer Pich, North Dakota Game & Fish Dept.). Senator Lashkowitz voiced his concern over the phrase "and elsewhere" in subsection two because it might "permit [*sic*] a person from doing what he wants to on his own property." *Id.* The senate committee amended the "and elsewhere" provision to make subsection two apply to highways "or

---

1. Although *State v. Thomas*, 420 N.W.2d 747 (N.D.1989), held that the legislature did not intend to alter *Novak* by restructuring NDCC § 39–08–01, it correctly interpreted section 39–08–01 to prohibit actual physical control in a privately owned parking lot because we concluded, in effect, that the parking lot was an area to which the public had a right of access for vehicular use.

other places open to the public for the operation of vehicles." *Id.*

The House Transportation Committee considered the bill a second time in preparation for the conference committee meeting. It was told the Highway Patrol wanted "and elsewhere" in the law because under the Senate version (restricting jurisdiction to "highways or other places open to the public for the operation of vehicles") any violator "could drive off into a field and no one could touch him." Minutes of House Transportation Committee, March 25, 1983 (comments of Rep. Schoenwald, conference committee chair). The committee's final position on the Senate version is not clearly stated in the minutes. The minutes of the conference committee, however, indicate that the house committee did not concur in the amendment to subsection two narrowing the reach from highways "and elsewhere" to "places open to the public."

The conference committee discussed the proper reach of subsection two. It discussed the effect the bill had on the offense of actual physical control; however, its understanding is not recorded. Minutes of Conference Committee, March 29, 1983. The minutes reflect the highway patrol's concern over the elimination of "and elsewhere" by the senate amendment, and cite "an intoxicated driver in a field or pasture" as an example of offenses put beyond the patrol's reach by the amendment. *Id.* The language added by the Senate, "other places open to the public," made subsection two applicable "only to a parking lot primarily." *Id.* (comments of Norm Evans, North Dakota Highway Patrol). The conference committee receded from the senate amendment.

I draw from this record some clear intentions. There was no debate over the amendment to subsection one, the general provision making motor vehicle laws applicable to "highways or other places open to the public." There was debate over the proper reach of subsection two, the provision making listed offenses applicable to "highways and elsewhere." From this debate, I find an intent that the language in subsection two, "and elsewhere," reach further than subsection one's "other places open to the public," which was understood

to apply to parking lots. There is also a clear intent that "actual physical control" not be a part of the listed offenses in subsection two. *Novak* interpreted the "and elsewhere" language as the legislature intended, but ignored in its entirety the absence of actual physical control from the statute and the legislative intent to exclude actual physical control.

The majority relies on the inaction of the legislature subsequent to the *Novak* decision as evidence that the legislature has acquiesced to that interpretation of the reach of section 39–10–01(2) and its applicability to the offense of actual physical control. Legislative inaction is a " 'weak reed upon which to lean' and a 'poor beacon to follow' " in construing a statute. 2A N. Singer, Sutherland's Statutory Construction § 49.10 (4th ed. 1984). Because the legislature last amended section 39–10–01(2) before *Novak* was decided and the history of that amendment reveals an intent contrary to the interpretation given in *Novak*, I cannot think of a weaker reed or dimmer beacon than that provided in this case. In my view, *Novak* should be revisited in the appropriate case. It is not the last word on anything except the meaning of the "and elsewhere" language in section 39–10–01(2).

I concur in the result.

GIERKE, J., concurs.