**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Larry Dean BARNICK, Defendant and Appellant.**

**Cr. No. 910143.**

Supreme Court of North Dakota.

Nov. 12, 1991.

Richard J. Riha (argued), Asst. States Atty., Bismarck, for plaintiff and appellee.

Thomas W. Robb (argued), Bismarck, for defendant and appellant.

MESCHKE, Justice.

We consider whether a self-styled phlebotomist, without any medical credentials or supervision, was a qualified technician to withdraw blood for a test to determine whether a person was driving under the influence of intoxicating liquor (DUI). We conclude that she was not and we reverse the DUI conviction based on the test.

Larry Dean Barnick was stopped for erratic driving on I–94 in eastern Burleigh County on May 25, 1990. He was arrested for DUI, and taken to the sheriff's office at Steele, the closest point, for a blood-alcohol test. There, at the request of the arresting officer, Carole Fettig drew a blood sample from Barnick with a syringe and placed it in the glass vial of a blood-sample kit furnished by the arresting officer. Fettig completed and signed the accompanying form "To Be Filled In By Blood Specimen Collector," certifying that she withdrew the blood specimen in accordance with the directions by the State Toxicologist. The officer took the packaged blood sample and mailed it to the office of the State Toxicologist for analysis.

At Barnick's jury trial for DUI, the prosecution offered the report of the blood analysis as evidence of a blood alcohol concentration exceeding 0.10 percent by weight. Barnick objected that Fettig was not qualified to withdraw blood for testing. Fettig testified that she was not a physician, medical technologist, chemist, or registered nurse, but that she was a "phlebotomist" who was "educated, trained, and qualified in the drawing of body fluids and blood to be used for therapeutic and diagnostic purposes" by attending a three-semester-hour course at Bismarck State College. Fettig stated no other educational or professional credentials, and did not testify as to any medical supervision. Her instructor, Tammy Fred, testified that Fettig had completed the phlebotomy course in May 1990, but acknowledged that the course was not recognized or accredited by any professional medical organization. Instructor Fred held a degree in medical technology, had experience as a medical technologist, and worked as supervisor of laboratory services for patients at a medical clinic in Bismarck. The trial court admitted the report of the blood test, ruling that the foundation was "adequate based on the testimony regarding [Fettig's] qualifications."

The jury convicted Barnick. He appeals, challenging the evidentiary use of the test report because the blood sample had been drawn by a person neither qualified nor authorized by law.

Barnick relies on *Greaves v. North Dakota State Highway Commissioner*, 432 N.W.2d 879 (N.D.1988), holding that a police officer who was an emergency medical technologist-intermediate (EMT–I) was not a "qualified technician" authorized by statute to withdraw blood for a blood-alcohol-concentration test. The prosecution responds that *Greaves* was based on an administrative regulation that limited an EMT–I to providing "prehospital emergency medical care" as directed by a supervising physician. Thus, the prosecution argues, an EMT–I was plainly not qualified to withdraw blood in any other circumstance. In addition, the prosecution cites *Holler v. North Dakota Department of Transportation Director*, 470 N.W.2d 616 (N.D.1991), arguing that the term "qualified technician" is to be liberally construed.

■ "Phlebotomy" is a medical term for "[t]he practice of opening a vein for letting blood as a remedial measure; bloodletting," and a phlebotomist is one who practices phlebotomy. Funk and Wagnalls Standard Dictionary 595 (1983). The applicable statute directs that "[o]nly a physician, or a qualified technician, chemist, or registered nurse acting at the request of a law enforcement officer may withdraw blood for the purpose of determining the alcoholic, drug, or combination thereof, content therein." NDCC 39–20–02. This statute does not authorize a self-styled phlebotomist, without medical credentials and without medical supervision, to draw blood.

■ Medical considerations bear on whether a person is qualified and authorized to withdraw blood for a test. In *Greaves*, speaking for this court, Justice VandeWalle reasoned:

There are obvious reasons for requiring certain qualifications of those authorized to withdraw blood. The health of the individual is paramount. Protection against infection and pain can best be afforded by allowing only a qualified person to administer a blood test. The accuracy of the test also depends in large part upon the ability of the person drawing the blood to be able to obtain a fair sample.

*Greaves*, 432 N.W.2d at 881. *See also State v. Hanson*, 345 N.W.2d 845, 849–50 (N.D.1984) ("There is no doubt the restrictive provision of Section 39–20–02, limiting the procurement of blood samples to certain qualified persons, serves to protect not only the health of the person from whom the blood sample is taken but also the reliability of the blood sample itself. The blood sample was drawn in a hospital environment by a registered nurse."). For these reasons, we believe that the statutory designation of a "qualified technician," among other medical professionals authorized to withdraw blood for DUI testing,

denotes one that has either medical credentials, medical supervision, or both.

In *Holler*, this court held that a hospital medical technician was qualified to withdraw blood for DUI testing when "the blood was drawn in a hospital setting by hospital personnel," without further evidence of the medical technician's credentials. 470 N.W.2d at 618. We noted that licensure requirements for medical technicians had been enacted at NDCC 43–48–09, but that those licensure requirements had not become effective until after Holler's arrest and were inapplicable to his case. *Holler*, 470 N.W.2d at 617, n. 2. Note, also, that "a person ... currently employed in the practice of clinical laboratory medicine on July 12, 1989" qualifies for licensing, by "grandfathering," even though "that person does not meet the criteria established for licensure...." NDCC 43–48–12. However, these licensure requirements for a medical technician were also not effective at the time of Barnick's arrest, and are not applicable here either. *See* NDCC 43–48–03(6), also effective July 1, 1990 after Barnick's arrest, directing that the licensure provisions of NDCC ch. 43–48 regulating medical technicians do not apply to "[p]hlebotomy personnel performing phlebotomy procedures and bedside screening tests." Nevertheless, these licensure provisions contemplate either medical credentials or medical supervision for personnel performing medical procedures on members of the public.

Although there is no applicable licensure requirement in this case for a "qualified technician" to withdraw blood, "[t]he obvious purpose of the statute is to assure that a medically trained and competent individual will withdraw the blood sample in an acceptable manner." *Holler*, 470 N.W.2d at 618. Therefore, we conclude that a person without either medical credentials or medical supervision is not a "qualified technician" for withdrawing blood for DUI testing.

Since the sample was not properly obtained by a qualified technician, this blood test was erroneously used as evidence. NDCC 39–20–07(5) and (10). Since the test will not be admissible as evidence on retrial of Barnick, we need not address the other questions that he has raised about it on this appeal. We reverse Barnick's conviction and remand for a new trial.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.